# Illinois Official Reports

## Appellate Court

*People v. McClinton*, **2018 IL App (3d) 160648**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, v. AISHA N. McCLINTON, Petitioner-Appellant. |
| District & No. | Third District<br>Docket No. 3-16-0648 |
| Filed | May 10, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 10-CF-521; the Hon. Sarah-Marie Francis-Jones, Judge, presiding. |
| Judgment | Vacated and remanded. |
| Counsel on Appeal | Steven W. Becker and Jennifer L. Blagg, both of Chicago, for appellant.<br><br>James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, Peter A. Carusona, and Mark A. Austill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE McDADE delivered the judgment of the court, with opinion.<br>Presiding Justice Carter and Justice Schmidt concurred in the judgment and opinion. |

**OPINION**

¶ 1     Petitioner Aisha N. McClinton was convicted of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2010)). This court reversed McClinton's AUUW conviction because the statute under which she was prosecuted was declared unconstitutional by the Illinois Supreme Court. See *People v. McClinton*, No. 3-11-0455 (Dec. 18, 2013) (unpublished summary order under Illinois Supreme Court Rule 23(c)). McClinton filed a petition for a certificate of innocence, which was denied by the trial court. McClinton appealed, arguing (1) the trial court abused its discretion when it denied the petition for a certificate of innocence, (2) she is entitled to a new judge on remand, and (3) her claim for statutory damages must be resolved in the trial court on remand. We vacate the trial court's judgment and remand this case for issuance of a certificate of innocence.

¶ 2                                              FACTS

¶ 3     McClinton was charged with aggravated unlawful use of a weapon, bringing a firearm into a penal institution, and bringing cannabis into a penal institution. At the bench trial, the parties stipulated to the following sequence of events. On March 14, 2010, Illinois Department of Corrections Lieutenant Robert Banks and Illinois Department of Natural Resources Conservation Officer Holly Vadbunker were assigned to perform field searches in the front drive of Stateville Correctional Center. Correctional Officer S. Jacobs told Banks that a driver, later identified as McClinton, refused to have her car searched. Banks obtained a stop order through the Illinois Department of Corrections and searched the vehicle while McClinton stood next to the vehicle. During the search, Banks found what appeared to be cannabis under the driver's seat.

¶ 4     Afterward, McClinton returned to the vehicle and sat in the driver's seat, and Banks ordered her to put her hands on the steering wheel. McClinton refused to comply, and Banks called Vadbunker and Jacobs for assistance in removing her from the vehicle. When Vadbunker approached the vehicle, she saw McClinton with both hands behind her back. Vadbunker told McClinton to put her hands where Vadbunker could see them, and she complied with Vadbunker's request. Vadbunker asked McClinton what she was hiding, and McClinton stated " 'a gun' " and that the gun was in her waistband. McClinton was removed from the vehicle, and a 9-millimeter firearm was retrieved from the driver's seat.

¶ 5     McClinton was found guilty of AUUW, and the parties agreed to a sentence of 24 months' probation. However, the court rejected the offer and sentenced McClinton to 24 months' probation and 120 days in jail. McClinton objected to the sentence, and the court agreed to stay the mittimus for two weeks. Thereafter, McClinton filed a motion to reconsider sentence, arguing that she did not have an opportunity to present evidence in mitigation, and the court granted the motion. After the court reviewed the mitigation evidence, it sentenced McClinton to 36 months' probation and 156 days in jail. McClinton received 78 days' credit for time served.

¶ 6     In December 2013, this court reversed McClinton's AUUW conviction on the grounds that her conviction was facially unconstitutional pursuant to *People v. Aguilar*, 2013 IL 112116. *McClinton*, No. 3-11-0455. The State nol-prossed the remaining charges.

¶ 7        In February 2016, McClinton filed for a certificate of innocence. The State filed an objection to the certificate, arguing that McClinton failed to demonstrate factual innocence as required under section 2-702 of the Code of Civil Procedure. 735 ILCS 5/2-702 (West 2016). In a written order, the trial court denied McClinton's petition, stating:

"The Court, having reviewed petitioner's petition for a certificate of innocence, the People's replies to that pleading, applicable case law and the controlling statutes, hereby denies the petition for a certificate of innocence.

To be perfectly blunt, this defendant was, and is not, innocent of this offense on its facts, which all other procedural rulings (i.e. the statue [*sic*] being declared unconstitutional on appeal, and the People ultimately moving to *nolle* prosequi) aside, remains uncontroverted.

Petitioner and her trial counsel agreed to the truthfulness of the testimony of the witnesses from Stateville Correctional Center, namely that they would testify consistently with the information contained in their police reports. And it is factually accurate that Aisha McClinton had a gun on her person while present on the grounds of Stateville Correctional. Petitioner now wishes this Court to disregard the facts of the case, which she agreed to, and instead grant this petition on the appellate court's declaration of unconstitutionality of the statute alone.

Actual innocence means exactly that—that this petitioner, or any other petitioner for that matter, did not commit the offense and would be thus entitled to the certificate. Petitioner's argument that this certificate should issue because 'the Acts did not constitute a felony or misdemeanor against the State' after the *Aguilar* decision, is not correct. That is a basis for presentation of the certificate; it remains the law of this state that actual factual innocence must be established for relief sought to be granted and petitioner has not established actual factual innocence.

Petition denied."

¶ 8        McClinton filed a motion to reconsider, which the trial court denied without clarification, and she appealed.

¶ 9                                                ANALYSIS

¶ 10        We note at the outset that the trial court's assertion that the appellate court declared the statute unconstitutional is wrong. This court did not declare the statute unconstitutional, the supreme court did. *Aguilar*, 2013 IL 112116. This is clearly stated in this court's earlier order. *McClinton*, No. 3-11-0455. The summary order also stated that, "An unconstitutional statute 'dies as of its inception, rather than being void only as of the date of adjudication.' *People v. Gersch*, 135 Ill. 2d 384, 397 (1990)." The effect of the supreme court's ruling was that the crime with which the petitioner was charged and of which she was convicted did not exist in law. *Aguilar*, 2013 IL 112116. Petitioner was, therefore, legally innocent. We now consider whether that fact is a sufficient basis for a certificate of innocence.

¶ 11                                      I. Certificate of Innocence

¶ 12        McClinton argues that the trial court abused its discretion because it had failed to consider certain provisions within section 2-702(d) and (g) of the Code of Civil Procedure (735 ILCS 5/2-702(d), (g) (West 2016)) when it denied the petition. Specifically, McClinton claims that

- 3 -

she did not have to prove her innocence and that section 2-702(d) and (g) provide an additional clause that entitled McClinton to a certificate of innocence when her "acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the State." *Id.* § 2-702(d), (g)(3).

¶ 13    McClinton presents an issue of statutory interpretation. The fundamental rule of statutory interpretation is to ascertain and give effect to the intent of the legislature. *People v. Fields*, 2011 IL App (1st) 100169, ¶ 18. The most reliable indicator of that intent is the language of the statute itself. *Id.* If the statutory language is clear and unambiguous, it must be applied as written, without resorting to further aids of statutory interpretation. *Id.* The issue of statutory interpretation is reviewed *de novo*. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 6 (2009).

¶ 14    Section 2-702 allows a petitioner "to obtain a finding of innocence so that the defendant may obtain relief against the State for wrongful incarceration through the court of claims." *People v. Dumas*, 2013 IL App (2d) 120561, ¶ 16 (citing 735 ILCS 5/2-702(a) (West 2010) and *Betts v. United States*, 10 F.3d 1278, 1283 (7th Cir. 1993)). "Whether or not a petitioner is entitled to a certificate of innocence is generally committed to the sound discretion of the court." (Internal quotation marks omitted.) *Id.* ¶ 17.

¶ 15    Section 2-702(b) states the limits of which offenses we consider in evaluating whether McClinton is entitled to a certificate of innocence:

> "(b) Any person convicted and subsequently imprisoned for one or more felonies by the State of Illinois which he or she did not commit may, under the conditions hereinafter provided, file a petition for certificate of innocence in the circuit court of the county in which the person was convicted. The petition shall request a certificate of innocence finding that the petitioner was innocent of *all offenses for which he or she was incarcerated*." (Emphasis added.) 735 ILCS 5/2-702(b) (West 2016).

The only crime at issue in the instant case is the unconstitutional AUUW conviction.

¶ 16    Section 2-702(d) explains the sufficiency of the petition. It states:

> "(d) The petition shall state facts in sufficient detail to permit the court to find that the petitioner is likely to succeed at trial in proving that the petitioner is innocent of the offenses charged in the indictment or information *or his or her acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the State of Illinois*, and the petitioner did not by his or her own conduct voluntarily cause or bring about his or her conviction." (Emphasis added.) *Id.* § 2-702(d).

¶ 17    Section 2-702(g) addresses the elements necessary to obtain a certificate of innocence. It specifies:

> "(g) In order to obtain a certificate of innocence the petitioner must prove by a preponderance of evidence that:
>
>> (1) the petitioner was convicted of one or more felonies by the State of Illinois and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence;
>>
>> (2)(A) the judgment of conviction was reversed or vacated, and the indictment or information dismissed or, if a new trial was ordered, either the petitioner was found not guilty at the new trial or the petitioner was not retried and the indictment or information dismissed; *or (B) the statute, or application thereof, on which the*

- 4 -

*indictment or information was based violated the Constitution of the United States or the State of Illinois*;

(3) the petitioner is innocent of the offenses charged in the indictment or information *or his or her acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the State*; and

(4) the petitioner did not by his or her own conduct voluntarily cause or bring about his or her conviction." (Emphases added.) *Id.* § 2-702(g).

¶ 18　　The State asserts that McClinton cannot prove she is entitled to a certificate of innocence because she voluntarily caused her conviction in violation of section 2-702(d) and (g)(4) (*id.* § 2-702(d), (g)(4)). Furthermore, the State cites *People v. Holmes*, 2017 IL 120407, to support its argument that the void *ab initio* doctrine would not retroactively invalidate evidence of McClinton's guilt, and therefore, she must still prove that she did not voluntarily bring about her conviction.

¶ 19　　We find the State's reliance on *Holmes* is without merit. In *Holmes*, our supreme court ruled that the void *ab initio* doctrine had not retroactively invalidated probable cause for petitioner's arrest notwithstanding that probable cause was predicated on conduct prohibited by a statute later declared unconstitutional. *Id.* ¶ 39. The supreme court in *Holmes* reasoned that, pursuant to the lockstep doctrine, " '[p]olice are charged to enforce laws' " and that " '[t]he enactment of a law forecloses speculation by enforcement officers concerning its constitutionality.' " *Id.* ¶ 27 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979)).

¶ 20　　Here, the issue before this court is not probable cause; rather, the issue is whether McClinton voluntarily brought about a conviction governed by a statute later held void *ab initio*. When a statute is held to be facially unconstitutional, as is the situation in this case, the statute is said to be void *ab initio* or void from the beginning. *People v. McFadden*, 2016 IL 117424, ¶ 17. If the AUUW statute is void from the beginning, McClinton's conduct on March 14 would not have voluntarily brought about a conviction under a statute that was "constitutionally infirm from the moment of its enactment." *People v. Blair*, 2013 IL 114122, ¶ 30. This reasoning further comports with the legislative intent of the statute, which is to "distinguish between a finding of not guilty at retrial and actual innocence of the charged offenses." (Internal quotation marks omitted.) *Dumas*, 2013 IL App (2d) 120561, ¶ 18.

¶ 21　　The trial court determined that McClinton's argument that her acts did not constitute a felony or misdemeanor against the State did not exempt her from the requisite showing that she was factually innocent, *i.e.*, she did not voluntarily bring about her conviction under section 2-702(d) and (g). However, the evidence shows that McClinton met the elements of section 2-702(d) and (g) because (1) she was convicted of AUUW and served 156 days in jail and 36 months' probation; (2) the statute that she was convicted under was later held unconstitutional pursuant to *Aguilar*; (3) her acts charged in the indictment of which she was convicted and for which she was incarcerated did not constitute a felony or misdemeanor against the state because the charge was based on a statute later held unconstitutional; and (4) she did not intentionally cause or bring about her conviction because the statute that criminalized McClinton's actions is void *ab initio*, and therefore, her actions for which she was charged, convicted, sentenced, and incarcerated were not criminal at the time.

¶ 22　　Therefore, we find that the trial court's ruling was an abuse of discretion, and we vacate its order and remand the matter to the trial court for entry of a new order awarding McClinton a certificate of innocence. McClinton also contends that she is entitled to substitution of judge on

remand. Because we vacate the trial court's decision and remand with explicit instructions, we need not address this issue.

¶ 23                                          II. Statutory Damages

¶ 24     Lastly, McClinton alleges that this case should be remanded for damages pursuant to section 8(c) of the Court of Claims Act (705 ILCS 505/8(c) (West 2016)). In particular, McClinton argues that section 8(c) states that the trial court has the discretion to grant her an award for wrongful incarceration if she obtains a certificate of innocence.

¶ 25     "Section 2-702 makes available an avenue to obtain a finding of innocence so that the [petitioner] may obtain relief against the State for wrongful incarceration through the court of claims." *Dumas*, 2013 IL App (2d) 120561, ¶ 16. Section 8(c) of the Court of Claims Act states, in relevant part:

> "The court shall have exclusive jurisdiction to hear and determine the following matters:
>
> * * *
>
>      (c) All claims against the State for time unjustly served in prisons of this State when the person imprisoned received a pardon from the governor stating that such pardon is issued on the ground of innocence of the crime for which he or she was imprisoned or he *or she received a certificate of innocence from the Circuit Court as provided in Section 2-702 of the Code of Civil Procedure*; provided, the amount of the award is at the discretion of the court; and provided, the court shall make no award in excess of the following amounts: for imprisonment of 5 years or less, not more than $85,350 * * * and provided further, the court shall fix attorney's fees not to exceed 25% of the award granted." (Emphasis added.) 705 ILCS 505/8(c) (West 2016).

¶ 26     The term "the court" refers to the Court of Claims, not the trial court. See *id.* § 1 ("The Court of Claims, hereinafter called the court, is created."). Thus, section 8(c) provides the Court of Claims exclusive jurisdiction to grant or deny awards in claims where a petitioner received a certificate of innocence from the trial court. Accordingly, we reject McClinton's request to remand this case to the trial court for an award of damages.

¶ 27                                               CONCLUSION

¶ 28     The judgment of the circuit court of Will County is vacated and the matter remanded for issuance of a certificate of innocence.

¶ 29     Vacated and remanded.