2020 IL App (1st) 190435

THIRD DIVISION
December 23, 2020

No. 1-19-0435

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | 07 CR 1663 |
| | ) | |
| LEE MOORE, | ) | Honorable |
| | ) | Leroy Martin, |
| Defendant-Appellee. | ) | Judge Presiding |

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice Howse and Justice McBride concurred in the judgment and opinion.

**OPINION**

¶ 1   Petitioner was convicted of four offenses stemming from a multi-count indictment. One of the offenses, armed habitual criminal (AHC), was predicated in part on a prior conviction for aggravated unlawful use of a weapon (AUUW), based on a statute later held unconstitutional by the Illinois Supreme Court. As such, in 2016, the circuit court vacated petitioner's conviction for AHC.

¶ 2   After that vacatur, petitioner sought a Certificate of Innocence (COI) on the AHC count under section 2-702 of the Code of Civil Procedure (735 ILCS 5/2-702 (West 2018). The State intervened and objected, claiming that section 2-702 did not permit COIs when, as here, the petitioner was properly convicted of three of the four offenses. The trial court granted the COI on the AHC count only.

¶ 3    We read section 2-702 as does the State. Section 2-702 does not permit the issuance of a COI unless the petitioner is deemed innocent of *all* charges in the indictment for which the petitioner was convicted. We thus reverse the trial court's judgment and remand.

¶ 4                                   BACKGROUND

¶ 5    In September 2006, petitioner forced a man into petitioner's sports utility vehicle, drove him around, and robbed him at knifepoint. See *People v. Moore*, 407 Ill. App. 3d 1188 (table), No. 1-09-0665, 2011 WL 9685019, at *1 (Ill. App. Ct. Mar. 18, 2011). Two months later, when the police sought to curb petitioner's vehicle, petitioner "led police on a high-speed chase on the interstate and through residential areas," ultimately crashing the vehicle, whereupon he was arrested and found with a loaded firearm. *Id.*

¶ 6    After a bench trial in 2009, petitioner was convicted of four offenses: AHC (count 1), robbery (Count 3), unlawful use of a weapon by a felon (Count 7), and aggravated fleeing of a peace officer (Count 12). One of the predicate felonies for the AHC count was a 2004 conviction for AUUW.

¶ 7    In 2011, on direct appeal, this court affirmed the convictions but vacated count 7, as it merged into count 1 as a lesser-included offense. *Id.* at * 5.

¶ 8    About two years later, in *People v. Aguilar*, 2013 IL 112116, ¶ 22, our supreme court invalidated portions of the unlawful use of a weapon (UUW) statute. That decision rendered petitioner's 2004 conviction for AAUW void. And because that 2004 AUUW conviction served as a predicate felony conviction for the 2009 AHC conviction in count 1, the trial vacated count 1 in May 2016.

¶ 9    Following that vacatur, in 2018, petitioner filed the petition for a COI as to count 1 that is currently at issue. The State intervened and objected, claiming section 2-702 did not authorize a

COI unless a defendant was innocent of all charges. The circuit court disagreed and, in January 2019, granted the COI "as to Count 1 only." The court stayed the order pending this appeal.

¶ 10                                    ANALYSIS

¶ 11    While we normally review the grant or denial of a COI for an abuse of discretion, when the issue is an interpretation of section 2-702, our review is *de novo*. *People v. Simon*, 2017 IL App (1st) 152173, ¶ 20. This case presents what appears to be an issue of first impression in Illinois about the meaning of section 2-702.

¶ 12    Our primary goal in construing laws is to determine and give effect to the legislature's intent. *In re Detention of Lieberman*, 201 Ill. 2d 300, 307 (2002). "All other canons of statutory construction are subordinate to this cardinal principle." *People v. Clark*, 2019 IL 122891, ¶ 18.

¶ 13    We begin with the plain language of section 2-702, as it is "[t]he most reliable indicator of legislative intent." *People v. Gutman*, 2011 IL 110338, ¶ 12. We give the words their plain and ordinary meaning. *Id.* We attempt to give a reasonable meaning to "[e]ach word, clause, and sentence of a statute." *Clark*, 2019 IL 122891, ¶ 20.

¶ 14    We may consider "the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another." *Id.* We presume that the General Assembly "did not intend absurdity, inconvenience, or injustice in enacting legislation." *Id.* But as a reviewing court, we "are not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express." *Petersen v. Wallach*, 198 Ill. 2d 439, 446 (2002).

¶ 15                                          I

¶ 16    Our legislature enacted section 2-702 because innocent people have been wrongly incarcerated in Illinois and "have been frustrated in seeking legal redress due to a variety of

substantive and technical obstacles in the law." 735 ILCS 5/2-702(a) (West 2018). Section 2-702 provides an "avenue to obtain a finding of innocence so that [the wrongly incarcerated] may obtain relief through a petition in the Court of Claims." *Id.*; see *People v. Dumas*, 2013 IL App (2d) 120561, ¶ 16.

¶ 17     Our question is whether section 2-702 permits a "partial" COI. That is, may an individual wrongly incarcerated for one offense, but properly incarcerated for another, obtain a COI for the wrongful conviction alone? Petitioner says that even though he remained properly convicted of (and incarcerated for) other offenses, he is entitled to a COI only as to his now-vacated AHC conviction. The State says section 2-702 is an all-or-nothing proposition; the petitioner must be innocent of all offenses for which he is imprisoned, or he cannot obtain a COI for any of them.

¶ 18     As the State is quick to note, the formal title of section 2-702 is "Petition for a certificate of innocence that the petitioner was innocent of *all offenses* for which he or she was incarcerated." (Emphasis added.) 735 ILCS 5/2-702 (West 2018). Petitioner is just as quick to remind us that the title of a statute cannot override its plain language. *Home Star Bank & Financial Services v. Emergency Care & Health Organization, Ltd.*, 2014 IL 115526, ¶ 40. So we move on to the language of section 2-702.

¶ 19     Subsection (b) of the statute explains who may petition for a COI and what the petitioner may request. See 735 ILCS 5/2-702(b) (West 2018). Subsections (c) and (d) mandate the contents of that petition. See *id.* § 2-702(c), (d). Subsection (g) contains the elements of a successful COI petition. See *id.* § 2-702(g); *People v. McClinton*, 2018 IL App (3d) 160648, ¶ 17 ("Section 2-702(g) addresses the elements necessary to obtain a certificate of innocence."). Subsection (h) explains the duties of the court if it determines that a petitioner is entitled to a COI. See 735 ILCS 5/2-702(h) (West 2018).

¶ 20    We provide that general outline up front because the State criticizes petitioner for focusing on the language of subsection (g) and focuses, itself, on subsection (h). It is our intention to review the statute as a whole, including each of those subsections and others. See *Clark*, 2019 IL 122891, ¶ 20. But we agree with petitioner that the analysis should begin with subsection (g), as that subsection states the elements to obtain a COI. See *McClinton*, 2018 IL App (3d) 160648, ¶ 17; *People v. Glenn*, 2018 IL App (1st) 161331, ¶ 15; *Simon*, 2017 IL App (1st) 152173, ¶ 28. That is the section petitioner must satisfy to prevail on his request for a COI, so it is the place we start.

¶ 21    Unfortunately for petitioner, while we agree with him that we must first look to that subsection, we disagree that its language supports his position. Subsection (g) provides four elements for a successful COI petition, each of which must be satisfied (as evidenced by the "and" following paragraph (g)(3)). We quote subsection (g) in full here:

> "In order to obtain a certificate of innocence the petitioner must prove by a preponderance of evidence that:
>
> (1) the petitioner was convicted of one or more felonies by the State of Illinois and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence;
>
> (2)(A) the judgment of conviction was reversed or vacated, and the indictment or information dismissed or, if a new trial was ordered, either the petitioner was found not guilty at the new trial or the petitioner was not retried and the indictment or information dismissed; or (B) the statute, or application thereof, on which the indictment or information was based violated the Constitution of the United States or the State of Illinois;

(3) the petitioner is innocent of the offenses charged in the indictment or information or his or her acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the State; and

(4) the petitioner did not by his or her own conduct voluntarily cause or bring about his or her conviction." 735 ILCS 5/2-702(g) (West 2018).

¶ 22    Petitioner argues that the first element, subsection (g)(1), referencing a petitioner "convicted of one or more felonies" (*id.* § 2-702(g)(1)), suggests that a single felony conviction alone could be the subject of a COI. But that language is nothing more than a recognition that some people are in prison for only one felony conviction, while others are incarcerated for multiple felony convictions; this language makes clear that section 2-702 could apply to either wrongly-incarcerated individual.

¶ 23    The fourth element, that "the petitioner did not by his or her own conduct voluntarily cause or bring about his or her conviction" (*id.* § 2-702(g)(4)), does not provide insight on our question. But the second and third elements, in subsections (g)(2) and (g)(3), do.

¶ 24    Subsection (g)(2) strongly suggests that a petitioner must be innocent of *all* offenses charged in the indictment, not just some. We reprint just that subsection here:

"(2)(A) the judgment of conviction was reversed or vacated, and the indictment or information dismissed or, if a new trial was ordered, either the petitioner was found not guilty at the new trial or the petitioner was not retried and the indictment or information dismissed; or (B) the statute, or application thereof, on which the indictment or information was based violated the Constitution of the United States or the State of Illinois." *Id.* § 2-702(g)(2).

¶ 25    Paragraph (2)(A) does not apply to petitioner or to anyone like petitioner, who was properly incarcerated for some convictions and wrongly incarcerated for another. It is true, of course, that petitioner's armed habitual criminal conviction was "vacated" (*id.* § 2-702(g)(2)(A)), but the second part of that clause—"and the indictment or information dismissed" (*id.*)—is not true here and would never be true if some of the charges leading to a petitioner's incarceration were legally valid. Here, for example, the entire indictment was not dismissed and would not have been subject to dismissal; petitioner's charges for aggravated fleeing and robbery remained legally valid, notwithstanding the invalidity of the AHC count. There is a wide difference between a charge or a count being dismissed and the indictment, in total, being dismissed.

¶ 26    In fact, we can think of no reason why that second clause regarding the indictment's or information's dismissal would be there at all, if the intent of the General Assembly was that even a single conviction among many could be the subject of a COI, as petitioner claims. If the legislature intended this law to apply to someone like petitioner, properly incarcerated on two convictions but improperly so on a third conviction, it would be enough to say that "the judgment of conviction was reversed or vacated." *Id.* The only reason to add the clause "and the indictment or information dismissed" (*id.*) was to make sure the law applied *only* to situations where *all* the charges leading to the petitioner's incarceration were legally invalid; it would only be in that instance that an indictment or information would be subject to dismissal.

¶ 27    Nor does paragraph (2)(B) apply. Petitioner argues that, because the AHC count was invalidated in light of *Aguilar*, the "statute *** on which the indictment or information was based violated the Constitution." *Id.* § 2-702(g)(2)(B). First of all, perhaps too technical a point: the AHC statute was not declared unconstitutional by *Aguilar*. The supreme court struck down a portion of the UUW statute. See *Aguilar*, 2013 IL 112116, ¶ 22. It was only because a 2004

AUUW conviction served as one of the predicates for petitioner's 2009 AHC conviction that the AHC conviction became legally invalid.

¶ 28    But even if we put that detail aside, the bigger point is that the indictment in this case was based on multiple statutes, not just one, including statutes outlawing the offenses of robbery and aggravated fleeing. Paragraph (2)(B) speaks of a singular "statute *** on which the indictment or information was based." 735 ILCS 5/2-702(g)(2)(B) (West 2018). Here, as in any situation where a petitioner is properly convicted of one or more crimes but improperly convicted of another, the indictment is not "based" on a single statute but multiple statutes.

¶ 29    Subsection (g)(3), requiring that "the petitioner is innocent of the *offenses* charged in the indictment or information or his or her *acts or omissions* charged in the indictment or information did not constitute a felony or misdemeanor against the State" (emphases added) (*id.* § (g)(3) (emphasis added)), likewise supports the State's position. The legislature's use of the plural, when the use of singular would have been just as easy, cannot be ignored.

¶ 30    A petitioner who is "innocent of the offenses charged in the indictment or information" (*id.*) is one who is innocent of *all* charges. Were it otherwise, the legislature easily could have written something like "innocent of one *or more* of the offenses charged" or, focusing more specifically, "innocent of the offense that is the subject of the COI petition." And again, why mention the indictment at all, if a single improper conviction could be separated from the rest of the valid convictions? It would be clumsy language, indeed, to use the collective phrase "offenses charged in the indictment" if the legislature wanted to allow individual wrongful convictions to be parsed out from legally valid ones.

¶ 31    Other provisions of section 2-702 lend further support to this conclusion. The State focuses principally on subsection (h), which delineates the content of the trial court's order if a

COI is warranted. In pertinent part, it provides: "If the court finds that the petitioner is entitled to a judgment, it shall enter a certificate of innocence finding that the petitioner was innocent of *all offenses* for which he or she was incarcerated." (Emphasis added.) *Id.* § 2-702(h). Plain language doesn't get any plainer than that. That subsection provides no authority for a circuit judge to find petitioner innocent of *some* of the offenses that led to petitioner's imprisonment but not others.

¶ 32    Likewise, subsection (b) provides:

"Any person convicted and subsequently imprisoned for *one or more* felonies by the State of Illinois *which he or she did not commit* may, under the conditions hereinafter provided, file a petition for certificate of innocence in the circuit court of the county in which the person was convicted. The petition shall request a certificate of innocence finding that the petitioner was *innocent of all offenses for which he or she was incarcerated.*" (Emphases added.) *Id.* § 2-702(b).

¶ 33    This language mirrors the remedy provided in subsection (h) and, likewise, unequivocally contemplates a petitioner who is innocent of *all* offenses. The petitioner may *only* request a COI that finds him innocent of "all offenses for which he or she was incarcerated." *Id.* A petitioner has no statutory authority to request a finding of innocence on some, but not all, offenses that led to incarceration.

¶ 34    Finally, we would return to subsection (h), which in detail discusses the consequences of a successful COI petition. Among other things, the trial court "shall enter an order expunging the record of arrest from the official records of the arresting authority and order that the records of the clerk of the circuit court and Department of State Police be sealed" and ordering that "the name of the defendant [be] obliterated from the official index" of the circuit court clerk. *Id.* § 2-702(h). All of those things obviously presuppose that the arrest was only for crimes of which the

petitioner has been found innocent. But of course, that would not be the case in a situation, as here, where the petitioner was arrested for multiple crimes, only one of which ultimately proved not to be a crime. Under petitioner's interpretation, he would be automatically entitled to an expungement of his arrest for crimes for which he was validly convicted—robbery and aggravated fleeing. That would not be a reasonable result, providing further evidence still that the legislature never envisioned a COI for someone like petitioner here, properly incarcerated for some crimes but improperly incarcerated for others.

¶ 35    The plain language of the statute can lead to only one conclusion: section 2-702 does not authorize a petition for COI when, as here, the petitioner was properly incarcerated based on at least one conviction, even though he or she was improperly incarcerated based on another.

¶ 36                                                    II

¶ 37    It may seem harsh that someone who was wrongly convicted of an offense would not be permitted to obtain a COI. But when one considers the purpose of section 2-702, it is not as unfair as it first appears—at least not always. The principal purpose of a COI is to allow the wrongfully incarcerated " 'to obtain a finding of innocence so that [they] may obtain relief against the State for wrongful incarceration through the court of claims.' " *McClinton*, 2018 IL App (3d) 160648, ¶ 14 (quoting *Dumas*, 2013 IL App (2d) 120561, ¶ 16). A successful petitioner, armed with a COI, walks into the court of claims with conclusive evidence of his or her innocence, making it all but certain that the petitioner can obtain a money judgment against the State for wrongful incarceration. See 735 ILCS 5/2-702(j) (West 2018) ("The decision to grant or deny a certificate of innocence shall be binding only with respect to claims filed in the Court of Claims and shall not have a *res judicata* effect on any other proceedings.").

¶ 38    But at least generally speaking, subject to one caveat we will discuss below, a petitioner like the one before us, who was properly incarcerated on some convictions and improperly incarcerated on others, would not *have* a claim for wrongful incarceration, because that petitioner would have been incarcerated even *absent* the wrongful conviction. Take, for example, a defendant convicted of both reckless discharge of a firearm and UUW, who is sentenced to 20 months for reckless discharge and 15 months for UUW, the sentences to run concurrently. Even if the UUW conviction were later vacated because the UUW statute is unconstitutional, and thus the defendant should not have been incarcerated for *that* crime, the defendant would have spent that same amount of time and more in prison, anyway, based on his valid reckless discharge conviction. His invalid conviction added not a single day of time to his prison sentence. What claim, then, would that petitioner have for wrongful incarceration? None that we could imagine.

¶ 39    But the caveat is the inverse example: a defendant is convicted of two offenses, one validly and one wrongly, but the invalid conviction results in a defendant serving *more* time in prison than he otherwise would, either because he received a greater sentence for the invalid conviction or because the sentences ran consecutively, not concurrently. That, in essence, was the example the trial court posited—a defendant convicted of UUW along with a very minor drug possession conviction that yielded a concurrent sentence that was far less than the UUW conviction. In that event, *some* of the time the defendant spends in prison can be attributed to the valid conviction for drug possession, but what about the additional time the defendant was incarcerated, over and above the sentence on his valid drug conviction, based only on the invalid UUW conviction?

¶ 40    And that, of course, is the example present here, as well. Petitioner was sentenced to 15 years for AHC, 10 years for robbery, and 6 years for aggravated fleeing, the sentences to run

concurrently. The conviction with the greatest sentence was the wrongful conviction. And we know from the record that defendant spent time in prison beyond the time attributable to the robbery and aggravated fleeing convictions, because as soon as his AHC conviction was vacated, petitioner was released from prison.

¶ 41    All of which is to say that petitioner spent more time in prison than he should have. How much more, precisely, we do not know from the record. But the question is, does section 2-702 afford him a remedy for whatever amount of time he spent in prison over and above the time he would have spent in prison for his valid robbery and aggravated fleeing convictions?

¶ 42    The answer, unfortunately, is no. For the reasons we have given above, section 2-702 requires innocence of *all* offenses for which a petitioner is incarcerated. It might be preferable for section 2-702 to have made a distinction here and provide a COI for convictions that resulted in a petitioner serving a longer sentence than he otherwise would have, but that is not the statute before us, and we may not drastically rewrite the language to find a result we prefer. See *Wallach*, 198 Ill. 2d at 446; *Sullivan v. Village of Glenview*, 2020 IL App (1st) 200142, ¶ 65 ("There is a limit to the judicial surgery we will perform, lest this ordinance cease to be the Village's and become our own.").

¶ 43    But we do not take this to mean that petitioner is necessarily without any remedy whatsoever. Obtaining a COI is certainly advantageous, as the finding of innocence is binding on the court of claims. See 735 ILCS 5/2-702(j) (West 2018). But that doesn't necessarily mean that petitioner has no opportunity to seek redress in the court of claims for the time he wrongly spent in prison once he served his time for the robbery and aggravated fleeing convictions; it just means he won't walk in with a certificate from a trial judge that automatically establishes his innocence.

¶ 44    Likewise, obtaining a COI entitles petitioner to the grant of an automatic expungement of his conviction under the Criminal Identification Act. See 20 ILCS 2630/5.2(b)(8) (West 2018). But that may not be the only way an individual may expunge his conviction based on factual innocence. See *id.* § 5.2(b)(6); 730 ILCS 5/5-5-4(b) (West 2018).

¶ 45    We express no opinion on whether petitioner would have a viable claim before the court of claims or alternative avenues for expungement, as those questions are not before us. We note only that COIs are relatively new to the law, and other avenues and remedies that previously existed may still exist. Unless and until the General Assembly amends section 2-702 to provide a remedy for those imprisoned for a longer sentence than they should have received, absent the invalid conviction, those other avenues, if any, are the only ones available to petitioner.

¶ 46    Rather than reverse outright, we reverse and remand this matter to the circuit court in the event petitioner may seek any such additional remedy or relief.

¶ 47                                    CONCLUSION

¶ 48    The judgment of the circuit court is reversed, and the cause is remanded for any additional proceedings.

¶ 49    Reversed and remanded.

---

**No. 1-19-0435**

---

| | |
|---|---|
| **Cite as:** | *People v. Moore*, 2020 IL App (1st) 190435 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 07-CR-1663; the Hon. Leroy K. Martin Jr., Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Kimberly M. Foxx, State's Attorney, of Chicago (Cathy McNeil Stein, Paul A. Castiglione, and Ryan Gillespie, Assistant State's Attorneys, of counsel), for the People. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Joel A. Flaxman and Kenneth N. Flaxman, of Kenneth N. Flaxman P.C., of Chicago, for appellee. |

---