2025 IL 130595

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 130595)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
JAMES REED, Appellant.

Opinion filed October 23, 2025.

JUSTICE OVERSTREET delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Holder White and Cunningham concurred in the judgment and opinion.

Justice Rochford specially concurred, with opinion, joined by Justices Neville and O'Brien.

**OPINION**

¶ 1        Pursuant to a negotiated plea agreement, petitioner James Reed pleaded guilty to one count of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (C); (a)(2), (a)(3)(A), (C) (West 2002)), originating from a

four-count information. Also pursuant to the plea agreement, the State nol-prossed the remaining three counts.[1] Petitioner's AUUW conviction was based on a statute that was subsequently found unconstitutional by this court in *People v. Aguilar*, 2013 IL 112116, ¶ 22. After his conviction was vacated under *Aguilar*, petitioner requested a certificate of innocence (COI), pursuant to section 2-702 of the Code of Civil Procedure (COI statute and Code, respectively). 735 ILCS 5/2-702 (West 2022). The Cook County circuit court denied the petition for a COI, reasoning that the COI statute required petitioner to prove that he was innocent of all the offenses charged in the information and that he could not establish his innocence on all four AUUW counts. The appellate court agreed, concluding that the circuit court's denial of petitioner's petition for a COI was proper because petitioner failed to prove that he was innocent of all four charges in the information. 2024 IL App (1st) 230669-U, ¶¶ 1, 31. For the following reasons, we affirm the judgment of the appellate court.

¶ 2                                    I. BACKGROUND

¶ 3                              A. Charges, Plea, and Sentencing

¶ 4        Petitioner was arrested on October 6, 2003. The State charged petitioner, by information, with four counts of AUUW. Two of the counts were for carrying an uncased, loaded, and immediately accessible firearm in public or on a public street. 720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2002) (count I); *id.* § 24-1.6(a)(2), (a)(3)(A) (count III). The two remaining counts were for carrying a firearm in public or on a public street without a valid Firearm Owner's Identification (FOID) card. *Id.* § 24-1.6(a)(1), (a)(3)(C) (count II); *id.* § 24-1.6(a)(2), (a)(3)(C) (count IV).

¶ 5        On December 3, 2003, as part of a negotiated plea agreement, petitioner, represented by counsel, pleaded guilty to count I of AUUW (*id.* § 24-1.6(a)(1), (a)(3)(A)) in exchange for the State's agreement to nol-pros the three remaining counts. The parties stipulated to the following factual basis in support of petitioner's

_____

[1]Nol-pros refers to the State entering a *nolle prosequi*, which is a Latin term meaning " 'not to wish to prosecute.' " *People v. Hughes*, 2012 IL 112817, ¶ 22 (quoting Black's Law Dictionary 1147 (9th ed. 2009)). A *nolle prosequi* denotes the State's unwillingness to prosecute a charge. *Id.*

guilty plea. On October 6, 2003, petitioner was involved in a shooting. When petitioner was arrested, he had in his possession a loaded, semiautomatic handgun.

¶ 6    The circuit court found petitioner's guilty plea was knowing and voluntary, found the factual basis was adequate for the plea, accepted the plea, entered judgment on the plea, and sentenced petitioner to a 2-year probation term, with conditions of serving 6 months in the Cook County Department of Corrections—with credit for 59 days of actual incarceration already served—and abiding by the rules and regulations of the gang intervention unit of the adult probation department. After the sentence was imposed and pursuant to the plea agreement, the State nol-prossed counts II, III, and IV. Petitioner subsequently violated his probation, and on December 10, 2004, the circuit court resentenced him to one year in the Illinois Department of Corrections.

¶ 7                    B. *Aguilar* and Petitioner's Vacated Conviction

¶ 8    In 2013, this court filed its opinion in *Aguilar*, 2013 IL 112116, ¶ 22, concluding that the Class 4 felony form of section 24-1.6(a)(1), (a)(3)(A), (d) of the AUUW statute (720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2008))—the provision under which petitioner in this case pleaded guilty and was convicted—was facially unconstitutional. Eight years later, on November 19, 2021, petitioner filed, *inter alia*, a *pro se* petition to vacate his AUUW conviction, pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2020)), arguing that the conviction was unconstitutional and, thus, void under *Aguilar*, 2013 IL 112116. At the hearing on the section 2-1401 petition, the State conceded that petitioner had pleaded guilty to the form of AUUW that was declared unconstitutional by *Aguilar* and that the conviction should be vacated. The circuit court agreed and vacated petitioner's conviction on June 17, 2022.

¶ 9                                    C. COI Petition

¶ 10   In 2022, petitioner filed a *pro se* petition for a COI and a supplemental *pro se* petition for a COI, pursuant to the COI statute (735 ILCS 5/2-702 (West 2022)), arguing that he satisfied the requirements necessary to obtain a COI because he had been convicted of a felony and served a prison term, his conviction had been

vacated, and he did not bring about his own conviction because the statute that criminalized his actions was void *ab initio* pursuant to *Aguilar*'s finding that the statute was facially unconstitutional.

¶ 11    The State objected, maintaining that petitioner could not satisfy the requirements of subsection (g)(3) of the COI statute (*id.* § 2-702(g)(3)) because he failed to establish that he was innocent of all four AUUW offenses charged in the information. The State explained that, although petitioner was innocent of counts I and III under *Aguilar*, 2013 IL 112116, petitioner could not establish his innocence of counts II and IV because it remained illegal to possess a firearm without a FOID card and petitioner had never been issued a FOID card.

¶ 12    Petitioner responded that he was not relying on the first clause of subsection (g)(3), which requires proof that the petitioner is innocent of the charges in the charging instrument, but on the second clause, which allows a petitioner to prove that the acts charged in the indictment or information did not constitute a felony or misdemeanor at all. 735 ILCS 5/2-702(g)(3) (West 2022). Citing *People v. McClinton*, 2018 IL App (3d) 160648, petitioner argued that count I did not constitute a felony or misdemeanor because it was based on a statute that was later declared unconstitutional.

¶ 13    The circuit court denied the petition for a COI, reasoning that petitioner "ha[d] to demonstrate innocence as to all charges in the charging instrument" and that he could not demonstrate his innocence of counts II and IV, which were premised on his possession of a firearm without a FOID card.

¶ 14                              D. Appellate Court

¶ 15    The appellate court examined the COI statute in detail (2024 IL App (1st) 230669-U, ¶¶ 15-18) and concluded that, to satisfy subsection (g)(3), petitioner was required to prove that he was innocent of all four charges in the information (*id.* ¶ 19). The appellate court stated that petitioner did not prove his innocence of counts II and IV, both of which were premised on petitioner's possession of a firearm without a FOID card. *Id.* The appellate court explained that petitioner had never been issued a FOID card and, because it remained illegal to possess a firearm without a FOID card post-*Aguilar*, petitioner was not innocent of the AUUW

- 4 -

charges in counts II and IV. *Id.* As such, the appellate court concluded that petitioner did not meet the requirements of subsection (g)(3) and that the circuit court was correct in denying the petition for a COI. *Id.*

¶ 16    The appellate court acknowledged petitioner's argument that a COI, if granted, only declares a petitioner innocent of " 'offenses for which he or she was incarcerated.' " *Id.* ¶ 23 (quoting 702 ILCS 5/2-702(b), (h) (West 2022)). However, petitioner further argued that subsections (b) and (h) limit the entire scope of the COI statute to the offenses for which a petitioner was incarcerated and that no other charges are relevant. *Id.*

¶ 17    The appellate court disagreed, observing that the plain language of the COI statute distinguishes between what a petitioner must prove, *i.e.*, his innocence of the charges in the charging instrument, and the relief that is granted if he makes such a showing, *i.e.*, a COI on the charge for which he was incarcerated. *Id.* The appellate court added that petitioner's proposed reading rendered superfluous the requirement of subsections (d) and (g)(3) for a petitioner to prove his innocence of the charges in the charging instrument. *Id.*

¶ 18    The appellate court rejected petitioner's reliance on *McClinton*, 2018 IL App (3d) 160648, to support his argument that charges not resulting in a conviction are irrelevant in a COI analysis. 2024 IL App (1st) 230669-U, ¶ 26. The appellate court distinguished *McClinton*, as that case did not involve a guilty plea or nol-prossed charges as part of that plea, did not involve AUUW charges premised on possession of a firearm without a FOID card, and did not involve subsection (g)(3) of the COI statute. *Id.* Rather, *McClinton* focused on whether the petitioner in that case brought about her own conviction pursuant to subsection (g)(4) of the COI statute. *Id.*; see 735 ILCS 5/2-702(g)(4) (West 2022).

¶ 19    The appellate court also rejected petitioner's reliance on *People v. Palmer*, 2021 IL 125621, as *Palmer* did not establish that a petitioner may satisfy the requirements of subsection (g)(3) by proving he was innocent only of the charge for which he was convicted and incarcerated. 2024 IL App (1st) 230669-U, ¶ 29. Nor did *Palmer* establish that any remaining charges are irrelevant. *Id.* Rather, *Palmer* established that a petitioner is not required to prove he is innocent of "*uncharged* theories of culpability." (Emphasis in original.) *Id.*

¶ 20    The appellate court further noted—and rejected—petitioner's reliance on the discussion in *People v. Smith*, 2021 IL App (1st) 200984, that a petitioner is not required to demonstrate his innocence on nol-prossed charges because the State is unable to obtain a finding of guilt on those charges. 2024 IL App (1st) 230669-U, ¶ 30. The appellate court observed that this principle was also rejected by *People v. Warner*, 2022 IL App (1st) 210260, ¶¶ 36-37, which explained that the COI statute contains nothing to suggest that a petitioner's burden of pleading and proving innocence is relevant only to the charges on which the State can secure a guilty finding. 2024 IL App (1st) 230669-U, ¶ 30. The appellate court followed *Warner* and rejected petitioner's *Smith*-based arguments. *Id.*

¶ 21    In sum, the appellate court concluded that petitioner's AUUW conviction was properly vacated because the statute underlying count I that led to the conviction was unconstitutional under *Aguilar*. *Id.* ¶ 31. However, the appellate court determined that petitioner failed to establish his innocence of all the AUUW charges in the information. *Id.* Accordingly, the appellate court affirmed the circuit court's judgment denying the petition for a COI. *Id.* This court allowed petitioner's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Dec. 7, 2023).

¶ 22                              II. ANALYSIS

¶ 23    The issue before this court is whether the COI statute requires proof of innocence (1) only of the offense for which the petitioner is incarcerated or (2) of every offense in the charging instrument, including charges that are nol-prossed by the State as part of a negotiated plea agreement. Before proceeding with our analysis, we acknowledge that this court granted a motion of exonerees Charles Palmer, Jeremiah Cain, Larry Gillard, and Wayne Washington to file an *amicus curiae* brief in support of petitioner's stance on appeal. See Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 24                    A. Principles of Statutory Interpretation

¶ 25    The resolution of the issue at bar requires this court to interpret provisions of the COI statute. The primary goal of interpreting a statute is to ascertain and give effect to the intent of the legislature. *People v. Washington*, 2023 IL 127952, ¶ 27.

The best indicator of legislative intent is the statute's language, given its plain and ordinary meaning. *Palmer*, 2021 IL 125621, ¶ 53. We look at the statute in its entirety, construing words and phrases, not in isolation, but in light of other relevant provisions. *People v. Jackson*, 2011 IL 110615, ¶ 12. When interpreting a statute, each word, clause, and sentence must be given a reasonable meaning if possible, and no part of the statute should be rendered superfluous or meaningless. *Id.*

¶ 26  We may not "depart from the plain language and meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express." *People v. Woodard*, 175 Ill. 2d 435, 443 (1997). We also keep in mind the reason for the statute, the purposes to be achieved, the evils sought to be remedied, and the consequences of interpreting the statute one way or another. *Jackson*, 2011 IL 110615, ¶ 12. We presume that the legislature did not intend to create inconvenient, absurd, or unjust results (*id.*), and we construe the statute accordingly (*Evans v. Cook County State's Attorney*, 2021 IL 125513, ¶ 27). Issues of statutory interpretation are questions of law that we review *de novo*. *People v. Clark*, 2024 IL 130364, ¶ 15.

¶ 27  If a statute is unambiguous, we apply its provisions as written and do not consider extrinsic aids of statutory construction. *People v. Reyes*, 2023 IL 128461, ¶ 30. In contrast, if a statute is ambiguous, we may consider extrinsic aids, such as legislative history, to determine the legislative intent. *Id.* A statute is considered ambiguous where "it is capable of being understood by reasonably well-informed persons in two or more different ways." *People v. Stewart*, 2022 IL 126116, ¶ 13.

¶ 28                              B. COI Statute

¶ 29  We begin our analysis by reviewing the relevant statutory framework of the COI statute, as set forth in section 2-702 of the Code. 735 ILCS 5/2-702 (West 2022).

¶ 30                              1. Title

¶ 31  At the outset, we note the title of the COI statute: "Petition for a [COI] that the petitioner was innocent of all offenses for which he or she was incarcerated." *Id.*

Even so, we are mindful that "a statute's title cannot be used to limit the plain meaning of statutory text." *Home Star Bank & Financial Services v. Emergency Care & Health Organization*, *Ltd.*, 2014 IL 115526, ¶ 40. As such, we proceed by examining the provisions of the COI statute that are relevant to our analysis of the issue on appeal.

¶ 32                              2. Subsection (a)

¶ 33      The COI statute begins with a statement setting forth the statute's purpose. Subsection (a) explains "that innocent persons who have been wrongly convicted of crimes in Illinois and subsequently imprisoned have been frustrated in seeking legal redress due to a variety of substantive and technical obstacles in the law." 735 ILCS 5/2-702(a) (West 2022). Accordingly, "such persons should have an available avenue to obtain a finding of innocence so that they may obtain relief through a petition in the Court of Claims." *Id.* Subsection (a) further explains that a circuit court presented with a petition for a COI "shall, in the interest of justice, give due consideration to difficulties of proof caused by the passage of time, the death or unavailability of witnesses, the destruction of evidence or other factors not caused by such person or those acting on their behalf." *Id.*

¶ 34      This court has construed subsection (a) as stating the following threefold purpose: "(1) to sweep away technical obstacles, (2) to preclude [COIs] to those petitioners who voluntarily caused or brought about their convictions, and (3) to provide resources and compensation for innocent people wrongly incarcerated." *Washington*, 2023 IL 127952, ¶ 30.

¶ 35                              3. Subsection (b)

¶ 36      Subsection (b) of the COI statute establishes who may file a petition for a COI and where the petition is to be filed: "Any person convicted and subsequently imprisoned for one or more felonies by the State of Illinois which he or she did not commit may, under the conditions hereinafter provided, file a petition for [a COI] in the circuit court of the county in which the person was convicted." 735 ILCS 5/2-702(b) (West 2022). Regarding the relief sought, subsection (b) also provides that "[t]he petition shall request a [COI] finding that the petitioner was innocent of

all offenses for which he or she was incarcerated." *Id.*

¶ 37                                4. Subsection (c)

¶ 38    Subsection (c) of the COI statute sets forth the following documentation requirements to support the petition:

"(c) In order to present the claim for [a COI] of an unjust conviction and imprisonment, the petitioner must attach to his or her petition documentation demonstrating that:

(1) he or she has been convicted of one or more felonies by the State of Illinois and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence; and

(2) his or her judgment of conviction was reversed or vacated, and the indictment or information dismissed or, if a new trial was ordered, either he or she was found not guilty at the new trial or he or she was not retried and the indictment or information dismissed; or the statute, or application thereof, on which the indictment or information was based violated the Constitution of the Unites States or the State of Illinois; and

(3) his or her claim is not time barred by the provisions of subsection (i) of this Section." *Id.* § 2-702(c).

¶ 39                                5. Subsection (d)

¶ 40    Subsection (d) of the COI statute establishes requirements regarding the factual contents of the petition, providing:

"(d) The petition shall state facts in sufficient detail to permit the court to find that the petitioner is likely to succeed at trial in proving that the petitioner is innocent of the offenses charged in the indictment or information or his or her acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the State of Illinois, and the petitioner did not by his or her own conduct voluntarily cause or bring about his or her conviction.

The petition shall be verified by the petitioner." *Id.* § 2-702(d).

¶ 41                              6. Subsection (f)

¶ 42        Subsection (f) of the COI statute allows the circuit court in a COI proceeding to "take judicial notice of prior sworn testimony or evidence admitted in the criminal proceedings related to the convictions which resulted in the alleged wrongful incarceration." *Id.* § 2-702(f).

¶ 43                              7. Subsection (g)

¶ 44        Subsection (g) of the COI statute provides four elements the petitioner must prove by a preponderance of the evidence to obtain a COI:

    "(g) In order to obtain a [COI] the petitioner must prove by a preponderance of evidence that:

    (1) the petitioner was convicted of one or more felonies by the State of Illinois and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence;

    (2)(A) the judgment of conviction was reversed or vacated, and the indictment or information dismissed or, if a new trial was ordered, either the petitioner was found not guilty at the new trial or the petitioner was not retried and the indictment or information dismissed; or (B) the statute, or application thereof, on which the indictment or information was based violated the Constitution of the United States or the State of Illinois;

    (3) the petitioner is innocent of the offenses charged in the indictment or information or his or her acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the State; and

    (4) the petitioner did not by his or her own conduct voluntarily cause or bring about his or her conviction." *Id.* § 2-702(g).

¶ 45                                    8. Subsection (h)

¶ 46        In the event that the petitioner satisfies the burden of proof in subsection (g)
       and the circuit court concludes that the petitioner is entitled to a judgment,
       subsection (h) of the COI statute provides that the circuit court "shall enter a [COI]
       finding that the petitioner was innocent of all offenses for which he or she was
       incarcerated." *Id.* § 2-702(h).


¶ 47                                    C. Statutory Language

¶ 48        This court has held that "a broad interpretation" of the COI statute is necessary
       "to further the purposes of the statute" and that a restrictive reading "would defeat
       the legislative intent by imposing 'a technical legal obstacle.' " *Washington*, 2023
       IL 127952, ¶ 31 (quoting *Palmer*, 2021 IL 125621, ¶ 65). However, this court has
       also established that "a broad interpretation *** does not allow us to ignore the
       clear and unambiguous language" of a statute. *Van Dyke v. White*, 2019 IL 121452,
       ¶ 55. With these principles in mind, we turn to the parties' arguments pertaining to
       the statutory language.

¶ 49        Petitioner argues that the circuit court erred in denying his petition for a COI
       because the entire scope of the COI statute is limited to offenses of incarceration,
       which required him to prove his innocence only as to the charge for which he was
       incarcerated and not for the remaining charges that the State nol-prossed. The State
       responds that the plain language of the COI statute establishes that, to obtain a COI,
       petitioner was required to prove his innocence as to all offenses charged in the
       information, including the nol-prossed charges. Thus, the State contends that
       petitioner was required to prove that he was innocent of all four offenses charged
       in the information—not just the AUUW count for which he was incarcerated.

¶ 50        The parties' disagreement is derived from two distinct phrases used by the
       legislature in the COI statute: "offenses for which he or she was incarcerated," as
       provided in subsections (b) and (h) (735 ILCS 5/2-702(b), (h) (West 2022)), and
       "offenses charged in the indictment or information," as provided in subsections (d)
       and (g)(3) (*id.* § 2-702(d), (g)(3)). Here, petitioner highlights subsections (b) and
       (h). In particular, he directs this court's attention to the second sentence of
       subsection (b), which provides that "[t]he petition shall request a [COI] finding that

the petitioner was innocent of all offenses for which he or she was incarcerated." *Id.* § 2-702(b). Petitioner argues that this provision "makes plain" that a petition for a COI is limited to "all offenses for which he or she was incarcerated" (see *id.*) and that the word "shall" clearly denotes the legislature's intent to impose a mandatory obligation. As such, petitioner maintains that a petitioner "may *only* request a COI that finds him [or her] innocent of 'all offenses for which he or she was incarcerated' " (emphasis in original) (*People v. Moore*, 2020 IL App (1st) 190435, ¶ 33 (quoting 735 ILCS 5/2-702(b) (West 2018))) and that relief does not involve charges that were nol-prossed or for charges for which a petitioner was neither convicted nor incarcerated.

¶ 51        Petitioner cites *Palmer*, in which this court made the following declarations in reference to the relief sought as provided in subsection (b): "[S]ection 2-702 authorizes any person convicted and subsequently imprisoned for a crime that they did not commit to file a petition seeking a [COI] finding that the petitioner was innocent of all offenses for which they were incarcerated." *Palmer*, 2021 IL 125621, ¶ 55 (citing 735 ILCS 5/2-702(b) (West 2018)).

¶ 52        Petitioner also highlights subsection (h), which petitioner asserts imposes the same mandatory obligation regarding the relief granted: "If the court finds that the petitioner is entitled to a judgment, it shall enter a [COI] finding that the petitioner was innocent of all offenses for which he or she was incarcerated." 735 ILCS 5/2-702(h) (West 2022). Petitioner notes that, as in subsection (b), the word "shall" in subsection (h) likewise limits the COI to offenses of incarceration, which necessarily excludes charges that were nol-prossed and charges for which a petitioner was not incarcerated.

¶ 53        Petitioner correctly observes that, if a COI is granted, it pronounces the petitioner "innocent of all offenses for which he or she was incarcerated." *Id.* § 2-702(b), (h). We agree with petitioner that subsection (b)—which describes the relief sought by the petition (*id.* § 2-702(b))—and subsection (h)—which describes the relief granted by virtue of the COI issued by the circuit court (*id.* § 2-702(h))—are inherently limited to offenses for which the petitioner was incarcerated. Petitioner's above-cited quote from *Palmer* aptly references subsection (b) in this context. Yet, the limitation to offenses of incarceration in subsections (b) and (h) is not dispositive of the issue at bar because we may not ignore the plain language of the

remaining provisions of the COI statute, which provide the requirements for obtaining relief. See *Jackson*, 2011 IL 110615, ¶ 12 (courts do not read language in isolation but view the statute as a whole, in light of other relevant provisions).

¶ 54    As articulated by the appellate court, the plain language of the COI statute clearly distinguishes between what a petitioner must prove—his innocence of the charges in the charging instrument (see 735 ILCS 5/2-702(d), (g)(3) (West 2022))—and the relief he requests and obtains if he satisfies that burden of proof— a COI declaring his innocence of the charges for which he was incarcerated (see *id.* § 2-702(b), (h)). 2024 IL App (1st) 230669-U, ¶ 23.

¶ 55    Subsections (b) and (h) are limited to the particulars of the relief sought and granted and make no mention of the evidentiary burden a petitioner must satisfy to obtain a COI. The necessary proofs are set forth in subsections (d) and (g)(3), which establish that, to obtain a COI, a petitioner is required to allege specific facts in the petition demonstrating his innocence "of the offenses charged in the indictment or information" (735 ILCS 5/2-702(d) (West 2022)) and to prove, by a preponderance of the evidence, his innocence "of the offenses charged in the indictment or information" (*id.* § 2-702(g)(3)). Subsection (g) contains four elements, all of which must be proven by a preponderance of the evidence before a petitioner may obtain a COI. Here, the parties disagree on whether petitioner satisfied the element provided in subsection (g)(3).

¶ 56                              1. Subsection (g)(3)

¶ 57    Subsection (g)(3) of the COI statute requires a petitioner to prove either (1) his innocence of "the offenses charged in the indictment or information" or (2) that "his *** acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the State." *Id.*

¶ 58    Petitioner recounts the appellate court's conclusion that he did not meet the requirements of subsection (g)(3) because he could not prove his innocence of all the charges in the information. 2024 IL App (1st) 230669-U, ¶ 19. In particular, the appellate court found that petitioner could not prove his innocence of counts II and IV, both of which were premised on petitioner's possession of a firearm without a FOID card—which remained illegal post-*Aguilar*. *Id.* As such, the appellate court

concluded that the circuit court correctly denied the petition for a COI. *Id.*

¶ 59                                        a. *Palmer*

¶ 60        Petitioner requests this court to reject this "all charges" rule and interpret subsection (g)(3) as requiring a showing of innocence only of the offenses for which a petitioner is incarcerated. Petitioner maintains that in *Palmer*, 2021 IL 125621, this court construed subsection (g)(3) in that manner. In *Palmer*, the petitioner was charged with, *inter alia*, five counts of first degree murder, each asserting a different theory of culpability for murder. *Id.* ¶ 5. At trial, the State presented evidence that the petitioner and another individual burglarized the victim's apartment and, the following night, the petitioner returned to the apartment by himself and murdered the victim. *Id.* ¶ 7. The petitioner was convicted of first degree murder on the count that alleged that the petitioner intentionally killed the victim. *Id.* ¶¶ 5, 28. Several years later, the petitioner's conviction was vacated based on exonerating DNA evidence. *Id.* ¶¶ 31, 34. After the conviction was vacated, the petitioner filed a petition for a COI (*id.* ¶ 37), which the State challenged, arguing that the DNA evidence did not negate that the petitioner could still be guilty under a new theory of being an accessory in a felony murder (*id.* ¶ 44).

¶ 61        The circuit court in *Palmer* denied the petition for a COI because the petitioner was unable to prove by a preponderance of the evidence that he was " 'innocent of the charge of murder.' " *Id.* ¶ 47. The appellate court affirmed, rejecting the petitioner's argument that the State could not present a new theory of guilt. *Id.* ¶ 48. This court addressed the issue of whether subsection (g)(3) of the COI statute required the petitioner to prove that he "was innocent of the offense only as it was originally charged or innocent of every conceivable theory of criminal liability for that offense." *Id.* ¶ 1.

¶ 62        This court observed that, "because the word 'offenses' is modified by the phrase 'charged in the indictment or information,' the legislature intended that a petitioner establish his or her innocence of the offense on the factual basis *charged* in the indictment or information." (Emphasis in original.) *Id.* ¶ 64 (quoting 735 ILCS 5/2-702(g)(3) (West 2018)). This court rejected the State's position that it could assert a new theory that the petitioner was guilty of first degree murder as an accessory

when that theory was not originally charged. *Id.* ¶¶ 65-66. This court explained that, at trial, the State claimed that the petitioner alone murdered the victim. *Id.* ¶ 66. The State did not raise the theory that the petitioner was an accessory until years later at the COI proceedings. *Id.* Because the State did not originally present the accessory theory at trial, this court determined that the petitioner was not required to disprove that theory to attain a COI. *Id.* ¶ 67. This court concluded that subsection (g)(3) of the COI statute does not "require a petitioner to prove his innocence of a novel theory of guilt that was never charged." *Id.* ¶ 68.

¶ 63    Here, petitioner highlights the statement in *Palmer* that "the proper focus of subsection (g)(3)" is on the "allegations, as charged *and prosecuted* in [the] petitioner's criminal trial." (Emphasis added.) *Id.* ¶ 72. Petitioner emphasizes the words "and prosecuted" and contends that the proper focus of subsection (g)(3) in this case is limited to count I—the only offense for which he was charged *and prosecuted*. Petitioner adds that the appellate court contradicted *Palmer* by applying the "all charges" rule, which included charges that were nol-prossed in the original proceeding. We disagree.

¶ 64    The *Palmer* court's use of the words "and prosecuted" does not denote an intent to rewrite subsection (g)(3) of the COI statute to require a showing of innocence only of offenses of incarceration. Indeed, the words "and prosecuted" in *Palmer* were included in reference to the underlying factual context and were not germane to the court's resolution of the issue in that case. The issue in *Palmer* involved a novel theory of guilt that was never charged, which implicated this court's interpretation of the word "offenses." *Id.* ¶¶ 60-63. Because "offenses" was repeatedly modified by the words " 'charged in the indictment or information,' " the *Palmer* court determined that "the legislature intended that a petitioner establish his or her innocence of the offense on the factual basis *charged* in the indictment or information." (Emphasis in original.) *Id.* ¶ 64. That conclusion in no way suggests that the word "offenses" was limited only to the charges for which the petitioner was incarcerated, and we reject petitioner's argument to the contrary.

¶ 65    Petitioner also highlights the *Palmer* court's holding: "[S]ubsection (g)(3) requires a petitioner to prove by a preponderance of the evidence his or her innocence of the offense as it was charged in the indictment or information that resulted in the wrongful criminal conviction." *Id.* ¶ 72. Petitioner maintains that he

satisfied subsection (g)(3) under this reasoning because the charge here "that resulted in the wrongful criminal conviction" (*id.*) is count I, of which petitioner was innocent because the charge on which the conviction was based was declared unconstitutional. This mischaracterizes the holding in *Palmer*.

¶ 66 Nothing in *Palmer* signifies that the *charge* must result in the wrongful conviction. Indeed, *Palmer*'s holding did not focus on the "charge," as petitioner proposes, but on the "offense *as it was charged*." (Emphasis added.) *Id.* This is because *Palmer* involved a novel theory of guilt that was never charged. The holding in *Palmer* is clarified by a similar comment earlier in the decision: "[B]ecause the word 'offenses' is modified by the phrase 'charged in the indictment or information,' the legislature intended that a petitioner establish his or her innocence of the offense *on the factual basis charged* in the indictment or information." (Emphasis added and in original.) *Id.* ¶ 64. This further demonstrates that the court's attention was on the offense *as it was charged* in the charging instrument. See *id.* ¶ 72. We reject petitioner's argument that *Palmer* construed subsection (g)(3) to require a showing of innocence only of the offenses for which a petitioner is incarcerated.

¶ 67 We further note the disparity between the issue in *Palmer* and the issue here. The issue in *Palmer* was whether subsection (g)(3) of the COI statute required the petitioner to prove that he "was innocent of the offense only as it was originally charged or innocent of every conceivable theory of criminal liability for that offense." *Id.* ¶ 1. Unlike *Palmer*—where the State advanced an uncharged accountability theory for the first time in the COI proceedings (*id.* ¶ 71)—here, petitioner was charged with AUUW without a FOID card at the beginning of the criminal proceedings, and the State pursued those charges until petitioner pleaded guilty to count I as part of the negotiated plea agreement. *Palmer* is further distinguishable, as the petitioner there submitted DNA evidence to prove that he did not kill the victim—the act from which all the charges against him were derived. *Id.* ¶¶ 31, 34. In contrast, here, petitioner did not prove that he did not possess a firearm on the day of his arrest—the act from which all the charges against petitioner were derived in this case. Nor did petitioner attempt to disprove these facts, as he stipulated to them as the factual basis to support his guilty plea. For the stated reasons, *Palmer* is distinguished and inapplicable here.

¶ 68                                    b. *Green*

¶ 69        Petitioner also cites *People v. Green*, 2024 IL App (2d) 220328, ¶¶ 3, 30, 36,
53—a case from the second appellate district with facts similar to those here—in
which the majority considered *Palmer* and concluded that, under subsection (g)(3)
of the COI statute, a petitioner is only required to prove his innocence of the charges
for which he was incarcerated and not the charges in the charging instrument that
were nol-prossed by the State as part of a negotiated plea agreement. The *Green*
majority found that *Palmer* supported that reading because it did not mention the
residential burglary charge in that case for which the petitioner was found not
guilty. *Id.* ¶¶ 44-45. The dissent in *Green* concluded that the plain language of the
COI statute established that a petitioner must prove innocence of all offenses
charged—not only those for which the petitioner was convicted and incarcerated
but also those that were nol-prossed. *Id.* ¶ 65 (Hutchinson, J., dissenting). We
disagree with the *Green* majority's reasoning.

¶ 70        In *Palmer*, the burglary charge was not nol-prossed; rather, the petitioner was
tried and acquitted of burglary. *Palmer*, 2021 IL 125621, ¶ 28. Moreover, the State
did not raise—nor did this court consider—the issue of whether the petitioner could
prove his innocence of burglary for purposes of subsection (g)(3). The sole issue in
*Palmer* focused on the new and uncharged theory of liability underlying the first
degree murder charge. *Id.* ¶¶ 46-48, 51. We overrule *Green* and its interpretation of
subsection (g)(3) of the COI statute, which erroneously required a petitioner to
prove innocence only of the offenses of incarceration.

¶ 71                                   c. *McClinton*

¶ 72        Petitioner also cites the third appellate district's decision in *McClinton*, 2018 IL
App (3d) 160648. At the outset, we note that *McClinton* is distinguishable from this
case because it did not involve a guilty plea. See *id.* ¶ 1. *McClinton* is further
distinguishable because the issue there was whether the defendant voluntarily
caused or brought about her own conviction under subsection (g)(4) of the COI
statute (*id.* ¶ 20). Yet, petitioner urges this court to follow *McClinton* and find that
the charges of which a defendant was not convicted and incarcerated are irrelevant
in a COI analysis.

¶ 73 In *McClinton*, the petitioner was charged with AUUW, bringing contraband (cannabis) into a penal institution, and bringing contraband (a firearm) into a penal institution. *Id.* ¶ 3. A stipulated bench trial was conducted, and the petitioner was convicted of AUUW. *Id.* ¶¶ 3, 5. The AUUW conviction was subsequently vacated pursuant to *Aguilar*.[2] *Id.* ¶¶ 1, 6. The petitioner filed a petition for a COI, which the State challenged.[3] *Id.* ¶ 7.

¶ 74 The circuit court agreed with the State and found that, notwithstanding the AUUW statute being declared unconstitutional and the State nol-prossing the remaining counts, the petitioner " 'was, and is not, innocent of this offense on its facts' " because the uncontroverted evidence showed that the petitioner possessed a firearm on her person while present inside a penal institution. *Id.* Notwithstanding those stipulated facts, petitioner requested the circuit court to grant the COI petition on the sole basis of the unconstitutionality of the AUUW statute. *Id.* The circuit court rejected the petitioner's argument that she was entitled to a COI "because the [a]cts did not constitute a felony or misdemeanor against the State after the *Aguilar* decision." (Internal quotation marks omitted.) *Id.* The circuit court concluded,

> " 'That is a basis for presentation of the [COI]; it remains the law of this state that actual factual innocence must be established for the relief sought to be granted and petitioner has not established actual factual innocence.
>
> Petition denied.' " *Id.*

¶ 75 On appeal, the petitioner argued that she was not required to prove her innocence, as subsections (d) and (g)(3) of the COI statute contain a second clause that entitled her to a COI, "when her 'acts or omissions charged in the indictment

---

[2]The *McClinton* record reflects that, prior to the stipulated bench trial, the State indicated its intent to nol-pros the remaining two charges of bringing contraband into a penal institution. The circuit court's subsequent order vacating the petitioner's AUUW conviction per *Aguilar* also reflects that the State moved for *nolle prosequi* on the remaining counts in the bill of indictment.

[3]The *McClinton* record reflects the State's argument that the petitioner only showed that her conviction was vacated and the charges were dismissed, which the State maintained was insufficient because neither the vacated conviction nor the dismissed charges established that the petitioner did not commit the offense charged in the indictment. In other words, the State argued that the petitioner failed to establish factual innocence as opposed to legal innocence, as required by the COI statute.

or information did not constitute a felony or misdemeanor against the State.' " *Id.* ¶ 12 (quoting 725 ILCS 5/2-702(d), (g)(3) (West 2016)).[4] The appellate court in *McClinton* commenced its COI analysis by reviewing the relevant statutory provisions. Petitioner in this case asserts that, pursuant to that statutory review, the *McClinton* court held that subsection (b) of the COI statute "states the limits of which offenses we consider in evaluating whether [the petitioner] is entitled to a [COI]." *Id.* ¶ 15. This statement in *McClinton* was not the court's holding or conclusion but merely its description of the contents of subsection (b), which established the basis of the court's remaining COI analysis. A careful reading reveals this description of subsection (b) is incorrect.

¶ 76        The *McClinton* court, without analysis or explanation, mistakenly identified subsection (b) as "stat[ing] the limits of which offenses we consider in evaluating whether [the petitioner] is *entitled* to a [COI]." (Emphasis added.) *Id.* The question of whether a petitioner is *entitled* to a COI implicates the burden of proof, which subsection (b) does not provide. As noted above, the burden of proof is set forth in subsection (g)(3). See 735 ILCS 5/2-702(g)(3) (West 2022). The plain language of subsection (b) establishes the parameters of who may file a petition for a COI, where the petition is to be filed, and the prayer for relief in the petition, which requires the petitioner to "request a [COI] finding that the petitioner was innocent of all offenses for which he or she was incarcerated." *Id.* § 2-702(b). As earlier discussed, this limitation in subsection (b) applies solely in the context of the relief sought in the petition. As such, it does not "state[ ] the limits of which offenses [courts] consider in evaluating whether [the petitioner] is entitled to a [COI]" as *McClinton* erroneously indicates. *McClinton*, 2018 IL App (3d) 160648, ¶ 15.

¶ 77        The *McClinton* court's misconstruing of subsection (b) is the sole premise upon which it based its subsequent conclusion that "[t]he only crime at issue in the instant case is the unconstitutional AUUW conviction" (*id.*), which correspondingly rendered irrelevant the nol-prossed charges in that case. Because *McClinton*'s ensuing COI analysis was based on these initial errors, its ultimate conclusion was likewise erroneous—that the petitioner satisfied subsections (d) and (g) because,

---

[4]Though *McClinton* addressed this second clause of subsections (d) and (g)(3) rather than the first clause as in this case, both clauses incorporate the phrase "charged in the indictment or information."

*inter alia*, "her acts charged in the indictment *of which she was convicted and for which she was incarcerated* did not constitute a felony or misdemeanor against the state because the charge was based on a statute later held unconstitutional." (Emphasis added.) *Id.* ¶ 21. In so concluding, the *McClinton* court improperly rewrote the COI statute (see *Reyes*, 2023 IL 128461, ¶ 34) by adding the phrase "of which she was convicted and for which she was incarcerated" (*McClinton*, 2018 IL App (3d) 160648, ¶ 21), thereby deviating from the plain language of subsections (d) and (g)(3) by incorporating exceptions, limitations, or conditions that the legislature did not express (see *Woodard*, 175 Ill. 2d at 443).

¶ 78    The *McClinton* court vacated the circuit court's judgment and remanded for issuance of a COI. *McClinton*, 2018 IL App (3d) 160648, ¶¶ 1, 22, 28-29. The court reasoned that, *inter alia*, because the AUUW statute that criminalized the petitioner's actions was void *ab initio* under *Aguilar*, the actions for which the petitioner "was charged, *convicted, sentenced[,] and incarcerated* were not criminal at the time." (Emphasis added.) *Id.* ¶ 21. This statement likewise adds to the COI statute exceptions, limitations, or conditions that the legislature did not express. See *Woodard*, 175 Ill. 2d at 443.

¶ 79    To summarize, we conclude that the *McClinton* court misconstrued subsection (b) of the COI statute and, based on that misconstruction, conducted an incorrect COI analysis and, by virtue of its conclusion, erroneously rewrote subsections (d) and (g)(3) of the COI statute by adding exceptions, limitations, or conditions that the legislature did not express. See *id.*; *Reyes*, 2023 IL 128461, ¶ 34. *McClinton* is overruled to the extent of these errors.

¶ 80                              2. Other Subsections

¶ 81    Petitioner further argues that other subsections of the COI statute contain language limiting the entire scope of the COI statute to offenses of conviction and incarceration.

¶ 82                                    a. Subsection (c)

¶ 83        Petitioner contends that subsection (c)—which identifies documents attached
to a petition for a COI—references the requested relief as a COI "of an unjust
conviction and imprisonment." 735 ILCS 5/2-702(c) (West 2022). As in our
analysis of subsections (b) and (h), we find the language of subsection (c) likewise
does not support petitioner's reading of subsection (g)(3), as subsection (c) merely
pertains to requested relief and does not implicate the standard or elements required
to attain that relief. We reject petitioner's argument that subsection (c) alters the
plain language of subsection (g)(3) to limit the entire scope of the COI statute to
offenses of conviction and incarceration.

¶ 84                                    b. Subsection (f)

¶ 85        Petitioner next cites subsection (f), which allows the court to take judicial notice
of evidence related "to the convictions which resulted in the alleged wrongful
incarceration." *Id.* § 2-702(f). Any judicially noticed evidence under subsection (f)
has no bearing on the burden of proof as set forth in subsection (g)(3). We reject
petitioner's argument that subsection (f) alters the plain language of subsection
(g)(3) to limit the entire scope of the COI statute to offenses of conviction and
incarceration.

¶ 86                                    c. Subsection (g)(1)

¶ 87        Petitioner also observes that subsection (g)(1) "makes conviction and
imprisonment an element of a [COI]." Subsection (g)(1) requires the petitioner to
prove that he was convicted of one or more felonies, that he was subsequently
sentenced to imprisonment, and that he has served any or all of the sentence. *Id.*
§ 2-702(g)(1). As earlier observed, the burden of proof contains four elements.
Subsection (g)(1) is one of the four and is separate from the other elements. See *id.*
§ 2-702(g). Each of the four elements is distinct, and each must be proven before a
petitioner may obtain a COI. *Id.* Subsection (g)(1) is not at issue here, as it is
undisputed that petitioner fulfilled that element. Nor does subsection (g)(1) have
any bearing on subsection (g)(3)'s separate requirement for petitioner to prove his
innocence of the offenses charged in the information. See *id.* § 2-702(g)(3). We

- 21 -

reject petitioner's argument that subsection (g)(1) limits the entire scope of the COI statute to offenses of conviction and incarceration.

¶ 88                    D. Canons of Statutory Interpretation

¶ 89        Petitioner next argues that the appellate court's reading of the COI statute leads to absurd, inconvenient, or unjust results (see *Jackson*, 2011 IL 110615, ¶ 12) because it requires proof that is broader than the scope of available relief. Petitioner urges this court to reject the appellate court's view that, " '[i]f the legislature had intended that a petitioner was required to allege and show only that they were innocent of the 'offenses for which he or she was incarcerated,' subsections (d) and (g)(3) would contain the same language as found in subsections (b) and (h).' " 2024 IL App (1st) 230669-U, ¶ 24 (quoting *Warner*, 2022 IL App (1st) 210260, ¶ 28). Petitioner further claims that this reasoning renders the limitation in subsections (b) and (h) to offenses of incarceration as mere surplusage, which violates the rule for courts to view the statute as a whole, not to construe words or phrases in isolation, and not to render any term superfluous. See *Jackson*, 2011 IL 110615, ¶ 12.

¶ 90                                    1. *Fair*

¶ 91        In support, petitioner cites *People v. Fair*, 2024 IL 128373, ¶ 1, in which this court determined the applicable standards of a hearing upon referral to the circuit court by the Torture Inquiry and Relief Commission (Commission). The *Fair* court construed a provision of the Illinois Torture Inquiry and Relief Commission Act (Act) (775 ILCS 40/1 *et seq.* (West 2018)), which provided that, " '[i]f the Commission concludes there is *sufficient evidence of torture to merit judicial review*, the Chair of the Commission shall request the Chief Judge of the Circuit Court of Cook County for assignment to a trial judge *for consideration*.' " (Emphases in original.) *Fair*, 2024 IL 128373, ¶ 67 (quoting 775 ILCS 40/50(a) (West 2018)). Because section 50(a) of the Act was silent as to the scope of the words "for consideration," the *Fair* court applied the definition of a "claim of torture" from section 5 of the Act to determine what the circuit court was required to "consider" at the hearing. *Id.* ¶¶ 62, 79 (citing 775 ILCS 40/5(1) (West 2018)).

¶ 92 Applying *Fair*, petitioner here argues that the modifier "for which [the petitioner] was incarcerated," as provided in subsections (b) and (h) of the COI statute, should follow the word "offenses" wherever it appears throughout the remainder of the statute, including subsection (g)(3). We find petitioner's reliance on *Fair* misplaced. In *Fair*, subsection (a) of the Act was silent as to the scope of the words "for consideration." See *id.* ¶ 67. Conversely, here, subsection (g)(3) of the COI statute is not silent as to the scope of the word "offenses." See 735 ILCS 5/2-702(g)(3) (West 2022). The General Assembly chose to apply "charged in the indictment or information" as a modifier to "offenses" in subsection (g)(3). See *id.*

¶ 93 Petitioner is essentially asking this court to rewrite subsection (g)(3) by either (1) replacing "innocent of the offenses charged in the indictment or information" with "offenses for which he or she was incarcerated" or (2) adding "offenses for which he or she was incarcerated" to the already existing "innocent of the offenses charged in the indictment or information." We decline petitioner's request to do either, as this court is "not free to rewrite legislation or to ignore an express requirement contained in a statute." *Reyes*, 2023 IL 128461, ¶ 34. Moreover, adding the modifier from subsections (b) and (h)—"offenses for which [the petitioner] was incarcerated"—to subsection (g)(3), which contains its own modifier—"innocent of the offenses charged in the indictment or information," would result in an absurd construction of subsection (g)(3), as there can be no offense for which a petitioner was incarcerated with which he was not also charged in the indictment or information. See *Evans*, 2021 IL 125513, ¶ 27 (courts must construe statutes to avoid absurd results).

¶ 94 For the stated reasons, *Fair* is inapplicable to this case. Accordingly, we reject petitioner's corresponding arguments that the appellate court read subsection (g)(3) in isolation and rendered the language of subsections (b) and (h) superfluous. Contrary to petitioner's assertions, the appellate court reviewed the plain language of the COI statute as a whole and correctly observed that the subsections serve separate purposes, exemplified by the distinction between the requirements set forth in the plain language of subsections (b) and (h) and those in the plain language of subsections (d) and (g)(3). See 2024 IL App (1st) 230669-U, ¶ 23.

¶ 95                                    2. Hypotheticals

¶ 96          Petitioner next provides several hypotheticals to support his argument that the
       "all charges" rule leads to absurd results. First, petitioner cites the special
       concurrence in *Warner*, 2022 IL App (1st), 210260, ¶ 49 (Martin, J., specially
       concurring), which indicated the rule would in some cases be "unduly cumbersome
       upon the petitioner, contrary to the legislature's intent, and unjust." The special
       concurrence in *Warner* explained that "[a] petitioner not proven guilty of nol-
       prossed charges through stipulated facts or evidence adduced at trial may face great
       difficulty in proving their innocence of those charges, especially if such charges
       were not closely connected to the offense of conviction." *Id.* ¶ 53. Petitioner
       emphasizes that the special concurrence in *Warner* did not suggest a reading of the
       COI statute that would consistently apply to every fact pattern and that modifying
       the interpretation of the COI statute on a case-by-case basis is inconsistent with
       *stare decisis* and could constitute courts usurping the legislature's role of amending
       the statute. Thus, petitioner urges this court to reject the "all charges" rule in the
       interest of adopting a uniform interpretation of the COI statute.

¶ 97          Second, petitioner asserts that an absurd result would arise when two defendants
       are charged in the same indictment, where the "all charges" rule would require one
       defendant to prove innocence of all charges in the indictment, including those
       brought solely against the codefendant. Petitioner contends that this is the absurd,
       inconvenient, or unjust result that the legislature sought to avoid.

¶ 98          Third, petitioner cites the fourth appellate district's *People v. Brown*, 2022 IL
       App (4th) 220171, ¶ 42 (Doherty, J., specially concurring), in which the special
       concurrence considered additional hypotheticals:

              "[I]f the prosecution chooses to nol-pros a charge due to lack of evidence and
              later enters into a plea agreement on the remaining charges, will the defendant
              seeking a [COI] have to prove innocence of the claim the State abandoned on
              the merits? If a defendant must prove innocence of the other charges reflected
              in 'the' indictment, and if a plea agreement resolves two separate indictments,
              will this obligation extend to all charges in both indictments? If a defendant
              wrongfully convicted of a major felony is successful in having that conviction
              vacated, will the inability to prove innocence of a misdemeanor charged in the
              same indictment or information thwart a request for a [COI] on the felony

charge? If a defendant goes to trial and is found guilty of one charge but not guilty of the other, and knowing that a finding of not guilty beyond a reasonable doubt is not the same as a finding of 'innocence,' would that defendant be required to show innocence with respect to both charges—including the one ending in acquittal—to receive a [COI]?"

Petitioner maintains that each of these questions would be resolved by limiting the COI statute to offenses of incarceration.

¶ 99      The State responds that these hypotheticals evince no more than petitioner's disagreement with the result the General Assembly reached after it balanced the relevant considerations. In the instance of proving innocence of offenses charged against a codefendant, the State counters that "the indictment or information" in subsection (g)(3) could reasonably be read to include only the charges brought against the petitioner. See *Evans*, 2021 IL 125513, ¶ 35 ("when a plain or literal reading of the statute leads to absurd results or results that the legislature could not have intended, courts are not bound to that construction, and the literal reading should yield"); see also *People v. Tanthorey*, 404 Ill. 520, 526 (1950) ("Indictments, though joint in form, are regarded as a several charge against each defendant ***."). The State adds that "parties can have strong policy disagreements about the law without that law being *absurd*." (Emphasis in original.) *People v. Bowers*, 2021 IL App (4th) 200509, ¶ 42. We agree and further observe that where the statutory language is clear and unambiguous, as in this case, it is unnecessary to inquire into public policy to construe the statute. *Chapman v. Richey*, 78 Ill. 2d 243, 248-49 (1980).

¶ 100      The State further argues that its interpretation avoids absurd results. The State cites *People v. Lesley*, 2024 IL App (3d) 210330, ¶ 30 (quoting *Brown*, 2022 IL App (4th) 220171, ¶ 25), in which the third appellate district explained: " '[W]e doubt the legislature envisioned compensating people who could have been lawfully imprisoned for more serious offenses but who happened to plead guilty to a lesser offense that was later recognized to be void *ab initio*.' " The State adds that the General Assembly distinguished between those whose convictions have been vacated and those who are innocent of the offenses charged in the information or indictment, which is a prerequisite to obtaining a COI.

¶ 101 Notwithstanding petitioner's hypotheticals and the myriad contextual scenarios that could arise, ultimately, the issue here is governed by the plain language of the COI statute. See *Palmer*, 2021 IL 125621, ¶ 53 (best indicator of legislative intent is statute's language, given its plain and ordinary meaning). In reviewing the plain language, we bear in mind that, "where the legislature includes particular language in one section of a statute but omits it in another section of the same statute, courts will presume that the legislature acted intentionally in the exclusion or inclusion" (*People v. Smith*, 2016 IL 119659, ¶ 30) "and that the legislature intended different results" (*People v. Hunter*, 2017 IL 121306, ¶ 48).

¶ 102 Applying those principles here, the plain language establishes that, to obtain a COI, a petitioner must allege facts in the petition in sufficient detail to establish innocence of the "*offenses charged* in the indictment or information" (emphasis added) (735 ILCS 5/2-702(d) (West 2022)) and prove by a preponderance of the evidence innocence of the "*offenses charged* in the indictment or information" (emphasis added) (*id.* § 2-702(g)(3)). In prescribing these requirements, the legislature employed the word "offenses," which is plural. Here, petitioner was charged with several "offenses" but only convicted and incarcerated for one, in exchange for the State nol-prossing the remaining charges pursuant to the negotiated plea agreement. The plain language of subsection (g)(3) requires petitioner to prove his innocence of the "offenses" charged in the information, as opposed to proving his innocence only of the "offense" for which he was incarcerated.

¶ 103 If the legislature intended for a petitioner to show innocence only of the "offenses for which he or she was incarcerated" as provided in subsections (b) and (h) (*id.* § 2-702(b), (h)), the legislature could have included that limiting language in subsections (d) and (g)(3), but it did not do so. The plain language of subsections (d) and (g)(3) denotes a clear legislative intent for a petitioner to allege facts and to prove that he or she is innocent of the offenses charged in the charging instrument. Because the legislature included express language in certain sections of the COI statute but omitted it in other sections, we presume it did so intentionally and intended different results. See *Smith*, 2016 IL 119659, ¶ 30; *Hunter*, 2017 IL 121306, ¶ 48.

¶ 104     We further observe that implementing petitioner's proposed interpretation would violate several established rules of statutory interpretation. Petitioner's reading would require us to read the limitations of subsections (b) and (h) in isolation and to limit the scope of the entire statute based solely on the limitations of those subsections. See *Jackson*, 2011 IL 110615, ¶ 12 (courts do not read language in isolation but view the statute as a whole, in light of other relevant provisions). Such reading would not give effect to every word, clause, and sentence as required, as it would render superfluous the plain language establishing the required proof in subsections (d) and (g)(3). See *id.* Petitioner's interpretation would also require us to write conditions into subsections (d) and (g)(3) that the legislature did not express. See *Woodard*, 175 Ill. 2d at 443.

¶ 105                E. Legislative Intent, Title, and Purpose of the COI Statute

¶ 106     Petitioner next argues that the "all charges" rule contravenes the legislative intent and purpose of the COI statute. Petitioner maintains that the COI statute focuses on individuals who have been "wrongly convicted of crimes in Illinois and subsequently imprisoned." 735 ILCS 5/2-702(a) (West 2022). This, petitioner argues, demonstrates that the COI statute is limited to convictions for which a petitioner was incarcerated, and this limitation is reflected in the statute's title: "Petition for a [COI] that the petitioner was innocent of all offenses for which he or she was incarcerated." *Id.* § 2-702.

¶ 107     At the outset of our analysis, we acknowledged not only the title of the COI statute but also the statute's purpose, as provided in subsection (a). We explained that a statute's title may not override the plain meaning of the statutory text. See *Home Star Bank*, 2014 IL 115526, ¶ 40. Yet petitioner persists that the title may be considered to provide guidance in resolving ambiguities in the statute. See *id.* Having found the plain language of the COI statute dispositive of the issue on appeal, we need not consider the statute's title to resolve any purported ambiguities. There is no ambiguity.

¶ 108     Petitioner further argues that the appellate court's reading departs from the purpose of the COI statute to remove "substantive and technical obstacles." 735 ILCS 5/2-702(a) (West 2022). While we are aware of that purpose, we are mindful that said purpose does not allow this court to ignore the unambiguous language of

the COI statute by adopting petitioner's proposed reading. Indeed, the COI statute does not provide that every petitioner whose conviction is vacated is entitled to a COI. The statute applies only in specific circumstances, and it is the province of the legislature to broaden its scope. The statute clearly prescribes the evidentiary burden for petitioner to prove his or her innocence of the "offenses charged in the indictment or information." *Id.* § 2-702(d), (g)(3).

¶ 109    Again, we give the statutory language its ordinary meaning, and we begin with the presumption that the legislature meant what it said in the unambiguous language. *People v. Moore*, 69 Ill. 2d 520, 524 (1978). Moreover, it would be absurd for the legislature to expressly state the purpose of the statute to avoid technical obstacles in subsection (a), then immediately proceed to impose a technical obstacle by virtue of the prescribed proof in subsections (d) and (g)(3). For these reasons, we reject petitioner's argument that the appellate court's reading constitutes a technical obstacle.

¶ 110                                    F. Foreign Jurisdictions

¶ 111    Petitioner next argues that, had the legislature intended to enact the "all charges" rule and require a COI petitioner to show innocence of charges beyond those of conviction and incarceration, it could have used the statutory language of other jurisdictions but it did not do so. The foreign jurisdictions cited by petitioner impose prerequisites to obtain a COI that are more stringent than those in the COI statute. Yet there was no obligation—or need—for the General Assembly to adopt the language of other jurisdictions, as it employed its own language, which expressly requires a showing of innocence of "the offenses charged in the indictment or information." 735 ILCS 5/2-702(d), (g)(3) (West 2022). We reject petitioner's arguments pertaining to the statutes of foreign jurisdictions.

¶ 112                                    G. Other Considerations

¶ 113    Petitioner asserts several arguments ancillary to those pertaining to the statutory language. We reiterate that, because the language of the COI statute is clear and unambiguous, the language governs the issue and this court is under no obligation to consider any policy arguments. See *Chapman*, 78 Ill. 2d at 248-49. We

nevertheless consider these arguments and find that they do not necessitate a different conclusion in this case.

¶ 114                                    1. Tort Principles

¶ 115        Petitioner argues that the "all charges" rule is inconsistent with tort principles embodied in the COI statute. Petitioner notes that subsection (a) of the COI statute establishes the statute's purpose to provide "innocent persons who have been wrongly convicted *** and subsequently imprisoned" an "avenue to obtain a finding of innocence so that they may obtain relief through a petition in the Court of Claims." 735 ILCS 5/2-702(a) (West 2022). That relief is realized through a claim "against the State for time unjustly served in prison[ ]," as provided in section 8(c) of the Court of Claims Act. 705 ILCS 505/8(c) (West 2022).

¶ 116        Petitioner explains that the "all charges" rule is inconsistent with principles of tort because, under that rule, he is unable to seek such relief for the nol-prossed charges for which he was not incarcerated and requiring him to prove innocence of such charges is inconsistent with the COI statute and the Court of Claims Act. Petitioner again cites *Green*, 2024 IL App (2d) 220328, ¶ 35, in which the majority observed that the nature of the COI statute "is a civil remedy that facilitates the award of compensatory damages for wrongful imprisonment based upon innocence." Because the petitioner in *Green* was incarcerated for only one count of AUUW while the other counts were nol-prossed, the majority held that there was "only one instance of damages proximately caused and only one crime that requires proof of innocence thereof." *Id.* ¶ 36. The *Green* majority found the nol-prossed charges irrelevant because the petitioner could not prove any damages proximately caused by those charges, for which he was not prosecuted, convicted, or sentenced. *Id.*

¶ 117        We agree with the State that petitioner conflates the basis for damages in a subsequent proceeding in the Court of Claims with the threshold evidentiary requirements in a COI proceeding, which are prerequisite to advancing to the Court of Claims. Petitioner is correct that he cannot seek relief for charges for which he was never convicted. Yet that has no bearing on the evidentiary burden for petitioners to prove their innocence of the charges in the charging instrument before they may obtain a COI. As petitioner notes, the Court of Claims Act establishes that

a COI is "conclusive evidence" that a petitioner was unjustly imprisoned for purposes of the Court of Claims proceeding. See 705 ILCS 505/8(c) (West 2022). However, unless a petitioner meets the threshold requirement of proving innocence of the charges in the charging instrument, he or she is not entitled to a COI and would have no grounds for proceeding to the Court of Claims. We reject petitioner's arguments to the contrary and overrule *Green* on this additional basis.

¶ 118                              2. *Nolle Prosequi*

¶ 119        Petitioner next argues that the "all charges" rule is inconsistent with the well-established meaning of a *nolle prosequi*. Petitioner provides the principle as set forth by the United States Supreme Court more than 100 years ago in *Dealy v. United States*, 152 U.S. 539, 542 (1894), that a *nolle prosequi* "leaves the prosecution just as though no such count had ever been inserted in the indictment."

¶ 120        Petitioner also cites the first appellate district majority's comments in *Smith*, 2021 IL App (1st) 200984, ¶ 25, that, "[a]bsent the refiling of the abandoned claim or a motion to vacate the *nolle prosequi* [citation], the State cannot pursue and thus has no ability to obtain a finding of guilt on an abandoned claim" and that "[w]e certainly do not read the COI statute to suggest that a petitioner would have to demonstrate his innocence of nol-prossed charges." (Emphasis omitted.)

¶ 121        Petitioner further cites *Green*, 2024 IL App (2d) 220328, ¶ 29 (quoting *People v. Totzke*, 2012 IL App (2d) 110823, ¶ 23), in which the majority observed that a *nolle prosequi* " 'reverts the matter to the same condition that existed before the commencement of the prosecution' " and that " 'no criminal charges remain pending against the defendant.' " (Emphases omitted.) Following *Smith*, the *Green* majority concluded that, for purposes of the burden of proof in the COI statute, the only offense "charged in the indictment" was the AUUW charge to which the petitioner pleaded guilty because all the other charges were dismissed by *nolle prosequi* and were no longer pending. *Id.* ¶¶ 30-31.

¶ 122        Applied here, petitioner argues that, even if subsection (g)(3) required a showing of innocence of "all charges," he satisfies that requirement because, after counts II, III, and IV were dismissed by *nolle prosequi*, the only charge in the information was count I—the AUUW charge to which he pleaded guilty. Petitioner

- 30 -

urges this court to follow *Smith* and *Green* and hold that the State may not oppose a COI by relying on a charge that was nol-prossed and for which the petitioner was neither convicted nor incarcerated.

¶ 123    The State responds that its agreement to nol-pros the charges of AUUW without a FOID card does not leave it "just as though no such count had ever been inserted in the indictment" (*Dealy*, 152 U.S. at 542), because the *nolle prosequi* was the product of a negotiated plea agreement between the parties. As the State explains, it did not enter the *nolle prosequi* in this case as a unilateral act but as a part of a bilateral, fully negotiated plea agreement with petitioner. The State asserts that this distinction was recognized in *People v. Smollett*, 2024 IL 130431, ¶ 60, where this court explained that, "if a dismissal is entered as part of a nonprosecution agreement between the State and the defendant, the manner of the dismissal is not important." Hence, the State deduces that, although a unilateral *nolle prosequi* reverts the matter to its preprosecutorial condition, a bilateral *nolle prosequi* does not, because where the State nol-prosses some of the charges in the charging instrument in exchange for the defendant's agreement to plead guilty to another charge, the parties have entered into a contract. See *People v. Absher*, 242 Ill. 2d 77, 90 (2011) ("contract principles govern a fully negotiated guilty plea").

¶ 124    Accordingly, the State posits that, where charges are bilaterally nol-prossed pursuant to a fully negotiated plea agreement, contract principles dictate that, if the petitioner's conviction is later vacated, the parties are returned to the *status quo* before the guilty plea. In this case, the *status quo* before the guilty plea included two charges of AUUW without a FOID card. The State argues that, because petitioner cannot meet the evidentiary burden of proving his innocence of the charges of AUUW without a FOID card, he is not entitled to a COI.

¶ 125    At the outset, we note that the *nolle prosequi* principle outlined in *Dealy* had nothing to do with a COI or the interpretation of a COI statute, as the issue in that case pertained to the sufficiency of an indictment. See *Dealy*, 152 U.S. at 542. Accordingly, the statement in *Dealy* has no application here.

¶ 126    We also find *Smith* inapposite, as the issue there was whether the petitioner met the requirements to obtain a COI, where he was found not guilty of the offense for which he was incarcerated but guilty of another offense charged in the same indictment or information. *Smith*, 2021 Il App (1st) 200984, ¶ 1. *Smith* is further

distinguishable, as it involved charges that were unilaterally nol-prossed by the prosecution and convictions that were procured following a bench trial (*id.* ¶ 3), while this case involves bilaterally nol-prossed charges and a guilty plea in the context of a fully negotiated plea agreement. Moreover, the *nolle prosequi* commentary in *Smith* is *dicta*, as it was not germane to the resolution of the issue in that case but merely used to address a suggestion by the State at oral argument. See *id.* ¶ 25. We overrule *Smith* to the extent that its *dicta* commentary is inconsistent with our conclusion in this case.

¶ 127    *Green*—like this case—involved bilaterally nol-prossed charges and a guilty plea that occurred as part of a fully negotiated plea agreement. *Green*, 2024 IL App (2d) 220328, ¶ 3. As such, its reliance on *Smith* was misplaced. Moreover, because *Green* relied on the *dicta* in *Smith*, its conclusion regarding the nol-prossed charges contradicts our conclusion here. See *id.* ¶¶ 30-31. We overrule *Green* on this additional basis.

¶ 128    In *Warner*, 2022 IL App (1st) 210260, ¶ 3, the petitioner pleaded guilty to AUUW as part of a negotiated plea agreement in exchange for the State's agreement to nol-pros seven remaining counts. The petitioner's AUUW conviction was subsequently rendered void by *Aguilar* and vacated. *Id.* ¶ 6. Four remaining AUUW counts, along with an unlawful use of a weapon count and an unlawful possession of a firearm count, remained constitutionally valid post-*Aguilar*. *Id.* The State did not move to reinstate the nol-prossed charges after the AUUW conviction was vacated. *Id.*

¶ 129    The petitioner subsequently filed a petition for a COI, alleging he was convicted and incarcerated under the statute declared unconstitutional by *Aguilar*. *Id.* ¶ 7. The petition for a COI contained nothing to show the petitioner's innocence of the remaining valid charges in the information. *Id.* The circuit court denied the petition for its failure to satisfy the requirements of the COI statute. *Id.* ¶ 9.

¶ 130    On appeal, the petitioner argued, *inter alia*, that even if he was required to show his innocence as to all the offenses charged in the information, the nol-prossed charges were exempt because the State did not reinstate those charges. *Id.* ¶ 33. The *Warner* court observed that the plain language of the COI statute "does not contain any language or any indication that the petitioner's burden of pleading and proving innocence applies only to the charges in the indictment or information on which the

State has an ability to obtain a finding of guilty." *Id.* ¶ 37. The court further observed that subsections (d) and (g)(3) "do not state that a petitioner is relieved of their burden to plead and establish their innocence of any charges in an indictment or information that have been nol-prossed." *Id.* ¶ 38.

¶ 131     The *Warner* court explained:

"[T]he State nol-prossed the charges based on a litigation decision and not on a concession of innocence. Specifically, pursuant to the terms of the negotiated agreement, petitioner pleaded guilty to one count of AUUW and upon acceptance of petitioner's plea and sentencing on that one count, the State nol-prossed the remaining counts. [Citation.] Therefore, to obtain a COI, petitioner was required to show his innocence as to the offenses charged in the information including those that were nol-prossed pursuant to the negotiated plea agreement." *Id.* ¶ 42.

¶ 132     We find *Warner* persuasive. Here, four offenses were charged in the information at the outset. It is of no consequence that the State subsequently nol-prossed three of the four charges pursuant to the negotiated plea agreement. It is also irrelevant that the nol-prossed charges were not reinstated. The nol-prossed offenses were included in the "offenses charged in the indictment or information," which is what the plain language requires. See 735 ILCS 5/2-702(d), (g)(3) (West 2022).

¶ 133     Indeed, the State's decision to nol-pros charges in exchange for a guilty plea on another charge is a common practice. For COI purposes, nol-prossing certain offenses does not mean that the offenses were never charged, and it certainly does not constitute the State's concession of innocence of the nol-prossed charges. Nowhere does the COI statute provide that "offenses charged" are limited to "offenses prosecuted" or that nol-prossed charges are excluded from "offenses charged." Such interpretation would read into the COI statute "exceptions, limitations, or conditions that the legislature did not express." See *Woodard*, 175 Ill. 2d at 443.

¶ 134     We agree with *Warner* that this conclusion avoids absurd results. If petitioner had pleaded guilty on either of the two constitutionally valid charges, he would not have been entitled to a COI by virtue of the other charges later being declared

unconstitutional by *Aguilar*. As *Warner* aptly indicated, "[g]ranting petitioner's request for [a] COI without showing his innocence as to the valid offenses charged in the information that were based on the same set of facts to which he stipulated when he pleaded guilty would lead to an absurd result." *Warner*, 2022 IL App (1st) 210260, ¶ 43. The same applies to this case.

¶ 135      Finally, petitioner argues that judicial estoppel applies to prohibit the State from changing course because counts II, III, and IV were abandoned by *nolle prosequi*. We disagree. For judicial estoppel to apply, the estopped party must have "(1) taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) have succeeded in the first proceeding and received some benefit from it." *Seymour v. Collins*, 2015 IL 118432, ¶ 37. Here, the State's nol-prossing the charges of AUUW without a FOID card as part of the negotiated plea agreement is not inconsistent with the State's argument here that petitioner must prove his innocence of those nol-prossed charges to obtain a COI. Nor did the State intend for the trier of fact to believe that petitioner was innocent of AUUW without a FOID card because it nol-prossed those charges. As such, judicial estoppel does not apply.

¶ 136      For the stated reasons, we reject petitioner's *nolle prosequi* arguments and conclude that the plain language of the COI provisions required petitioner to prove his innocence as to all the offenses charged in the information, including those that were nol-prossed as part of the negotiated plea agreement.

¶ 137                           3. Presumption of Innocence

¶ 138      Petitioner contends that the "all charges" rule is inconsistent with the presumption of innocence. Petitioner explains that due process principles underlying the presumption of innocence afforded to criminal defendants preclude the requirement for petitioners to prove innocence of all charged offenses to obtain a COI. Petitioner notes that the presumption of innocence remains with defendants "throughout every stage of the trial" and "is not overcome unless" the jury is "convinced beyond a reasonable doubt" of the defendant's guilt. Illinois Pattern Jury Instructions, Criminal, No. 2.03 (approved Dec. 8, 2011). Petitioner adds that a defendant who lost the presumption of innocence at conviction regains that

presumption if the conviction is overturned. *Johnson v. Mississippi*, 486 U.S. 578, 585 (1988). Applied here, petitioner argues that, when his conviction was vacated, the presumption of innocence was restored to him and requiring him to prove innocence of nol-prossed charges is inconsistent with that presumption.

¶ 139    Petitioner cites *Nelson v. Colorado*, 581 U.S. 128, 133-34 (2017), in which the United States Supreme Court considered a statute under which a defendant whose conviction was overturned could recover expenses paid because of the wrongful conviction. The statute allowed recovery only if the defendant met the burden of showing actual innocence by clear and convincing evidence. *Id.* at 134. The *Nelson* Court concluded that the statute violated due process. *Id.* at 134, 139. The Court explained that, "once those convictions were erased, the presumption of their innocence was restored" and the invalidated convictions did not justify Colorado keeping the money because "Colorado may not presume a person, adjudged guilty of no crime, nonetheless guilty *enough* for monetary exactions." (Emphasis in original.) *Id.* at 135-36.

¶ 140    Applied here, petitioner argues that the "all charges" rule has the same effect as the statute in *Nelson* because, although his conviction was vacated and the remaining counts dismissed, the "all charges" rule presumes that petitioner was "guilty *enough*" (emphasis in original) (see *id.*) to justify the denial of the COI. Thus, petitioner maintains that the "all charges" rule is inconsistent with the presumption of innocence. We disagree.

¶ 141    *Nelson* involved a different statute of a different state (Colorado) with different elements. Unlike the statute at issue in *Nelson*, the COI statute does not require a petitioner to prove his innocence as to the wrongful conviction. We further note that, although petitioner's presumption of innocence as to his criminal case was restored by virtue of the vacatur of his criminal conviction (see *Johnson*, 486 U.S. at 585), COI proceedings are not criminal but civil in nature and created by the COI statute, which provides an avenue for relief in the Court of Claims. See 735 ILCS 5/2-702(a) (West 2022). COI proceedings are governed by the rules of civil procedure, and the COI statute makes no mention of a petitioner's presumption of innocence. See *id.* § 2-702. This court is not at liberty to rewrite the COI statute or to read conditions regarding the presumption of innocence into it that the legislature did not express. See *Woodard*, 175 Ill. 2d at 443; *Reyes*, 2023 IL 128461, ¶ 34.

¶ 142     Moreover, it would be inconsistent for a presumption of innocence to apply to a COI proceeding, where the COI statute expressly states that the petitioner's burden is to prove by a preponderance of the evidence that he is innocent of the offenses charged in the indictment or information. See 735 ILCS 5/2-702(g)(3) (West 2022). See *Jackson*, 2011 IL 110615, ¶ 12 (we presume that the legislature did not intend absurd, inconvenient, or unjust results); see also *Woodard*, 175 Ill. 2d at 443 (we cannot read into the statute a limitation not expressed). For these reasons, we reject petitioner's arguments that the "all charges" rule is inconsistent with the presumption of innocence.

¶ 143                              4. Subsection (g)(4)

¶ 144     Because all four elements in subsection (g) must be satisfied and because we affirm the appellate court's judgment based on petitioner's inability to satisfy the elements of subsection (g)(3), we need not address the State's alternative argument that petitioner failed to satisfy subsection (g)(4).

¶ 145                              III. CONCLUSION

¶ 146     For the foregoing reasons, we conclude that the COI statute requires proof of innocence of every offense in the charging instrument, including charges that are nol-prossed by the State as part of a negotiated plea agreement and for which the petitioner was not incarcerated. Because petitioner here could not prove his innocence of all the AUUW charges in the information, including those that were nol-prossed by the State as part of the negotiated plea agreement, petitioner failed to satisfy the requirements of subsection (g)(3) of the COI statute and was therefore not entitled to a COI. Accordingly, we affirm the judgment of the appellate court, which affirmed the judgment of the circuit court.

¶ 147     Judgments affirmed.

¶ 148    JUSTICE ROCHFORD, specially concurring:

¶ 149    I concur in the majority's judgment. On the facts before the court, I believe that the majority reaches the correct decision. Nevertheless, I share the concerns of the concurring justices in *People v. Warner*, 2022 IL App (1st) 210260, ¶¶ 49-58 (Martin, J., specially concurring), and *People v. Brown*, 2022 IL App (4th) 220171, ¶¶ 39-43 (Doherty, J., specially concurring), that the analysis employed by the majority could prove problematic under different factual scenarios. I am not convinced that there is a "one size fits all" solution to the question before the court. *Always* requiring a petitioner to prove his or her innocence of all charged offenses would lead to absurd results, and *never* requiring a petitioner to do so would also lead to absurd results.

¶ 150    Here, requiring petitioner to prove that he was innocent of the other charges in the information makes perfect sense. Petitioner was charged with four counts of aggravated unlawful use of a weapon (AUUW) arising out of the same firearm possession. Two of the counts were for carrying the firearm in public or on a public street, and two counts were for carrying the firearm in public or on a public street without a valid firearm owners identification (FOID) card. All four charges were Class 4 felonies. Here, it is fortuitous for petitioner that the charge he agreed to plead guilty to was one of the two charges that was no longer valid after *Aguilar*. Moreover, the statute of limitations has run on the two valid charges of AUUW, so the State can no longer pursue them. If, however, petitioner was not innocent of those other valid charges based on the same firearm possession, then his conviction was not "wrongful" in any meaningful sense, and we have every reason to doubt that the legislature intended a person in his situation to be able to seek compensation from the State. See *People v. Lesley*, 2024 IL App (3d) 210330, ¶ 40 ("a valid dismissed charge is relevant to the issue of whether the petitioner was injured"). Had the State known that two of the charges were going to be invalidated by this court, its plea offer would have been for one of the other two AUUW charges, and petitioner could have received the same Class 4 felony sentence. As the appellate court stated in *Warner*:

    "If petitioner had pleaded guilty to any of the other constitutional charges for which there was apparent factual support, petitioner would not be entitled to a COI solely on the ground that the information included two AUUW charges

which were later determined to be constitutionally invalid. Granting petitioner's request for COI without showing his innocence as to the valid offenses charged in the information that were based on the same set of facts to which he stipulated when he pleaded guilty would lead to an absurd result." *Warner*, 2022 IL App (1st) 210260, ¶ 43 (majority opinion).

It is thus not surprising that the appellate court opinions requiring the petitioner to establish his innocence of other charged offenses have generally arisen in the context of the State dismissing other charges in exchange for one of the offenses invalidated by *Aguilar*. See *People v. Jones*, 2024 IL App (3d) 210414; *Lesley*, 2024 IL App (3d) 210330; *Brown*, 2022 IL App (4th) 220171; *Warner*, 2022 IL App (1st) 210260; see also *People v. Hilton*, 2023 IL App (1st) 220843 (defendant convicted of three counts had two vacated under one act, one crime principles and later successfully challenged his remaining conviction under *Aguilar*).

¶ 151    Outside of this context, however, there is reason to believe that the statute has never been understood to require exonerees to prove their innocence of every charged offense. Four exonerees who obtained certificates of innocence have filed an *amicus* brief with this court pointing out that they were not required to establish their innocence of every charged offense to obtain their certificates. They note the difficulties they would have faced if they had been required to do so.

¶ 152    Moreover, as noted by the majority, two appellate court justices have pointed out the potential problems with construing the statute to always require a petitioner to prove his innocence of all charged offenses. In *Warner*, Justice Martin wrote:

"We could easily conceive of circumstances that differ qualitatively from this case. A petitioner not proven guilty of nol-prossed charges through stipulated facts or evidence adduced at trial may face great difficulty in proving their innocence of those charges, especially if such charges were not closely connected to the offense of conviction. Requiring persons who were wrongly imprisoned to prove themselves innocent of every offense charged could result in deserving petitioners having to litigate matters far removed from the reason they were incarcerated. And their task may be hindered by 'the passage of time, the death or unavailability of witnesses, the destruction of evidence or other factors not caused by such persons or those acting on their behalf.' 735 ILCS

5/2-702(a) (West 2018). The legislature expressly intended to reduce these burdens. *Id.*

Or there could be circumstances where a minor offense was included in a charging instrument along with a much more serious offense for which the petitioner was wrongly convicted and imprisoned. To give a stark example, consider a defendant charged with first degree murder who was found to possess unlawful drugs when arrested. If such a defendant were wrongly convicted and could prove himself innocent of the murder after languishing in prison for many years, he could not obtain a COI, under a strict, literal reading of subsection (g)(3), if the drug charge was included in the charging instrument. I believe that the legislature intended for such a defendant to be considered innocent of first degree murder and, thus, eligible to obtain a COI. He was wrongly imprisoned due to the murder for which he was innocent, not the drug offense. It would be unjust to deny a petition for COI due to a relatively minor offense or a nol-prossed count for which the petitioner cannot reasonably obtain evidence to prove his innocence. That outcome would also defeat the legislature's intent to afford such situated petitioners 'due consideration' for the difficulties of proving their innocence. *Id.*" *Warner*, 2022 IL App (1st) 210260, ¶¶ 53-54 (Martin, J., specially concurring).

And in *Brown*, Justice Doherty wrote:

"While our decision resolves the issues presented in this case, it would be unwise to assume that different questions about the proper interpretation of this statute will not arise in future cases. For example, if the prosecution chooses to nol-pros a charge due to lack of evidence and later enters into a plea agreement on the remaining charges, will the defendant seeking a certificate have to prove innocence of the claim the State abandoned on the merits? If a defendant must prove innocence of the other charges reflected in 'the' indictment, and if a plea agreement resolves *two separate* indictments, will this obligation extend to all charges in *both* indictments? If a defendant wrongfully convicted of a major felony is successful in having that conviction vacated, will the inability to prove innocence of a misdemeanor charged in the same indictment or information thwart a request for a certificate of innocence on the felony charge? If a defendant goes to trial and is found guilty of one charge but not guilty of the

other, and knowing that a finding of not guilty beyond a reasonable doubt is not the same as a finding of 'innocence,' would that defendant be required to show innocence with respect to *both* charges—including the one ending in acquittal—to receive a certificate of innocence?" (Emphases in original.) *Brown*, 2022 IL App (4th) 220171, ¶ 42 (Doherty, J., specially concurring).

¶ 153    The concerns of Justices Martin and Doherty are not merely theoretical. The courts have been faced with these types of scenarios. Consider the case of Jeremiah Cain, one of the exonerees who filed an *amicus* brief with this court. Cain asserts that he was charged with murder and aggravated battery, based on an accountability theory, and two counts of AUUW. He claimed that he was beaten into falsely confessing to using a gun used in a fatal shooting. He was convicted of the murder and battery charges but acquitted of AUUW. After he spent 23 years in prison for a crime he did not commit, the conviction was vacated. Cain was eventually able to obtain a certificate of innocence (COI). Cain notes that he was not required to prove his innocence of the AUUW charges for which he had been acquitted and doing so would have been a virtual impossibility. How would he have proved that he had not handled a firearm 25 years ago?

¶ 154    Another of the *amici*'s cases was considered in *People v. Palmer*, 2021 IL 125621. Charles Palmer was charged with first degree murder and residential burglary. *Id.* ¶ 5. The burglary occurred one day prior to the murder. *Id.* A jury convicted him of first degree murder but acquitted him of residential burglary. *Id.* ¶ 28. He spent 16 years in prison before his conviction was vacated when DNA evidence taken from under the victim's fingernails excluded him as a possible contributor. *Id.* ¶¶ 31-34. Palmer sought a COI (*id.* ¶ 37), which the State opposed (*id.* ¶ 42). The State argued that the new evidence only exonerated Palmer as a principal but that he could still be guilty under an accountability theory. *Id.* ¶¶ 44-45. The State argued that Palmer could not obtain a certificate of innocence unless he could establish that he was also innocent under an accountability theory. *Id.* ¶ 44. The lower courts agreed with the State on this point (*id.* ¶¶ 47-48), but this court reversed and remanded and directed the circuit court to issue a certificate of innocence (*id.* ¶ 80). This court explained that the statute does not require a petitioner to establish his innocence of uncharged theories of liability. *Id.* ¶ 64. Palmer, however, was not required to establish his innocence of the burglary of the victim's apartment, which happened on the previous day. Palmer argues that this

would have required him to "prove innocence of a totally different crime using an entirely different set of evidence, marred by the passage of time." In this court's opinion, we never mentioned the burglary charge. Rather, once we concluded that petitioner had established his innocence of the murder charge, we remanded to the circuit court with directions to award petitioner a certificate of innocence. We did not instruct the circuit court to determine if petitioner had met his burden of proving all the statutory elements. See *id.* ¶ 80. In *People v. Green*, 2024 IL App (2d) 220328, ¶¶ 44-45, the appellate court found it significant that *Palmer* never mentioned the residential burglary charge.

¶ 155      The State responds that *Green*'s reliance on *Palmer*'s failure to mention the residential burglary charge is misplaced for the following reasons: (1) Palmer consistently denied his involvement in the burglary, (2) the only evidence of Palmer's involvement in the burglary was the testimony of a single witness whose fingerprints were on the stolen property, (3) the jury acquitted Palmer of the burglary, and (4) the State never contended that Palmer could not prove his innocence of the burglary. The majority agrees with the State on points (3) and (4). See *supra* ¶ 69.

¶ 156      The first two of the State's points are obviously irrelevant. Nothing in the statutory language suggests that a petitioner does not have to prove his innocence of offenses for which he denied involvement or offenses for which the evidence consists of the testimony of a single witness. As for Palmer's acquittal of the burglary charge, this court had not previously held that a petitioner need not prove his innocence of charges on which he or she was acquitted. If the majority is now holding this (see *supra* ¶ 69), that is certainly a reasonable position to take. But it is not a position that one reaches through an application of plain statutory language. As Justice Doherty pointed out in his special concurrence in *Brown*, a trier of fact's conclusion that the State has not met its burden of establishing guilt beyond a reasonable doubt is not the same as finding the defendant innocent. *Brown*, 2022 IL App (4th) 220171, ¶ 42. As for the State's failure to contest Palmer's innocence of the burglary charge, the State itself concedes that this is irrelevant. In its brief, the State argues that the statute requires the petitioner to establish all of the statutory requirements by a preponderance of the evidence regardless of whether the State contests the petition:

"Under the COI statute, a petitioner has the burden of proving by a preponderance of the evidence each of the requirements for a COI. 735 ILCS 5/2-702(g); *Washington*, 2023 IL 127952, ¶ 50. The requirement that the petitioner carry this burden is not subject to forfeiture by the People because—even absent the People's participation—the circuit court has a duty to consider the sufficiency of the petitioner's allegations and attached materials to determine whether the petitioner is entitled to a COI. See *Washington*, 2023 IL 127952, ¶ 50. Put differently, the court cannot grant a COI if a petitioner did not meet his evidentiary burden, even if the State did not identify for the circuit court all of the ways in which the petitioner failed to do so."

In other words, the State insists that the courts are required to hold the petitioner to his burden of proof on all statutory requirements even if the State fails to contest a point and even if the State fails to participate at all in the proceedings. So, this court's failure to mention the burglary charge in *Palmer* seems relevant. This court held that *Palmer* was entitled to a certificate of innocence on the murder charge without discussing whether he had proven his innocence of the burglary that happened the day before the murder. And the evidence that *Palmer* used to establish his innocence of the murder charge did not establish his innocence of the burglary. Palmer received his certificate of innocence without establishing his innocence of every charged offense.

¶ 157        It seems obvious that always requiring a petitioner to prove innocence of every charged offense will lead to consequences the legislature could not have envisioned. The majority does not directly address any of the hypotheticals mentioned by Justices Martin and Doherty in their special concurrences. Rather, the majority addresses petitioner's hypothetical that, if the State's reading of the statute is correct, then a defendant would arguably have to establish his innocence of charges in the indictment brought solely against a codefendant. The majority responds by saying that, when plain statutory language leads to absurd results or results that the legislature could not have intended, the court can reasonably read the language to mean something else. *Supra* ¶ 99.

¶ 158        As for the hypotheticals listed by Justices Martin and Doherty, the majority agrees with the State that these are not absurdities but simply policy disagreements over the legislature's choices. *Supra* ¶ 99. The majority quotes approvingly the

State's assertion that Justices Martin and Doherty's hypotheticals "evince no more than petitioner's disagreement with the result the General Assembly reached after it balanced the relevant considerations." *Supra* ¶ 99. This assertion does not withstand scrutiny.

¶ 159    The legislature's policy choice behind the enactment of the certificate of innocence statute is set forth in section 2-702(a):

"The General Assembly finds and declares that innocent persons who have been wrongly convicted of crimes in Illinois and subsequently imprisoned have been frustrated in seeking legal redress due to a variety of substantive and technical obstacles in the law and that such persons should have an available avenue to obtain a finding of innocence so that they may obtain relief through a petition in the Court of Claims. The General Assembly further finds misleading the current legal nomenclature which compels an innocent person to seek a pardon for being wrongfully incarcerated. It is the intent of the General Assembly that the court, in exercising its discretion as permitted by law regarding the weight and admissibility of evidence submitted pursuant to this Section, shall, in the interest of justice, give due consideration to difficulties of proof caused by the passage of time, the death or unavailability of witnesses, the destruction of evidence or other factors not caused by such persons or those acting on their behalf." 735 ILCS 5/2-702(a) (West 2022).

In *People v. Washington*, 2023 IL 127952, ¶ 31 (quoting *Palmer*, 2021 IL 125621, ¶ 68), we reiterated that we would give the statute a broad reading to effectuate these purposes because the statute is designed to " 'ameliorate, not impose, technical and substantive obstacles.' "

¶ 160    The legislature was mindful of the "difficulties of proof caused by the passage of time, the death or unavailability of witnesses, [and] the destruction of evidence" and sought to remove substantive and technical obstacles in the law that were preventing aggrieved persons from obtaining a finding of innocence that would allow them to seek redress in the court of claims. And yet, the majority confidently asserts that the legislature made a substantive policy choice *directly contrary to these purposes* that would prevent deserving petitioners from receiving certificates of innocence if they could not, for instance, prove their innocence of unrelated charges that were dismissed long ago. Under the majority's interpretation, the

- 43 -

legislature *would be* putting technical obstacles in the way of obtaining certificates of innocence and *would be* showing utter indifference to difficulties of proof caused by the passage of time, the death or unavailability of witnesses, or the destruction of evidence.

¶ 161 If we flesh out one of the hypotheticals given by Justices Martin and Doherty, we can see the absurdity of a rule that always requires a petitioner to demonstrate his or her innocence of every charge in the charging instrument. Assume a case involving the murder of a drug dealer. The defendant is one of several people alleged to have purchased a small amount of a controlled substance for personal use on the day of the murder. The police beat a false confession out of the defendant and hide evidence that pointed to another suspect. The defendant is charged with a misdemeanor drug possession offense in the same charging instrument as the murder charge. The defendant is convicted of murder and spends 30 years in prison for a crime he did not commit before conclusive evidence comes to light pointing to another suspect. The defendant's conviction is as wrongful as it can be, and he would be as deserving as anyone of a certificate of innocence. Regardless of what happened to the misdemeanor drug offense—whether it was dismissed, the defendant was convicted of it, or he was acquitted of it—it makes no sense whatsoever that the defendant's inability to prove that he did not possess a small amount of drugs 30 years ago would stand in the way of his obtaining a certificate of innocence for the murder conviction. Again, in this hypothetical the police obtained a false confession through torture, and the State charged *the wrong person* with the murder. The misdemeanor drug charge was unrelated to the reason the defendant spent 30 years in prison, and it could not have led to that sentence. The majority concedes that, in construing statutes, we presume that the legislature did not intend to create inconvenient, absurd, or unjust results. *Supra* ¶ 26 (citing *People v. Jackson*, 2011 IL 110615, ¶ 12). Denying a certificate to the defendant in this hypothetical would be inconvenient, unjust, and absurd. His ability to obtain a certificate of innocence for his 30-year wrongful incarceration for murder should not turn on whether the State elected to also charge him with a misdemeanor drug possession offense. Indeed, the absurdity of denying a certificate of innocence to this defendant would dwarf any and all absurdities arising from petitioner's construction. I strongly disagree with the majority's belief that denying a certificate of innocence to a person in this situation represents a policy choice by the legislature. *Supra* ¶ 99. Given the legislature's stated purpose in section 2-702(a), I

believe that the legislature would have intended that the defendant in this hypothetical would be able to receive a certificate of innocence on the murder charge without having to prove his innocence of a 30-year-old misdemeanor drug charge, just as Charles Palmer was able to obtain a certificate of innocence on his murder charge without having to prove his innocence of a 14-year-old burglary charge arising out of a crime on a different day, and just as Jeremiah Cain was able to obtain a certificate of innocence on his murder charge without having to prove that he had not handled a firearm more than two decades ago. If the majority is going to assert that the legislature made a policy decision to require COI petitioners to prove their innocence of charges unrelated to the reason for their incarceration in situations where obtaining the necessary proof would be impossible, then it is incumbent on the majority to explain what policy the legislature would be implementing by doing so. It is clearly not any of the policies that the legislature set forth in section 2-702(a).

¶ 162      The majority denies that requiring COI petitioners to prove things that would be virtually impossible to prove would be putting technical obstacles in the way of obtaining a COI. The majority reasons that, in subsection (a) (735 ILCS 5/2-702(a) (West 2022)), the legislature expressed its intention to remove technical obstacles. *Supra* ¶ 107. Therefore, according to the majority, always requiring a petitioner to prove his or her innocence of all charges in the indictment of information cannot be a technical obstacle. *Supra* ¶ 109. But this is doing the statutory construction backwards. The very question before the court is the meaning of the statutory phrase "the offenses charged in the indictment or information." The majority begins by assuming the correctness of its interpretation and then working backwards from there. I believe that what I have described above, and what Justices Martin and Doherty have described, are unquestionably technical obstacles that would often require proof of things that are impossible to prove. Given the legislature's stated purpose in subsection (a) to avoid precisely these things, I would construe the phrase "the offenses charged in the indictment or information" under the assumption that the legislature did not intend to thwart its own stated intent.

¶ 163      In order to effectuate the legislature's stated intent, it seems clear that "the offenses charged in the indictment or information" for which a petitioner must establish his or her innocence must have some reasonable nexus to the offense for which the petitioner seeks a COI. Courts have implicitly read the statute this way,

- 45 -

which explains why the majority of cases requiring proof of innocence of other charged offenses have arisen in cases such as the present one where the prosecution dismissed other valid charges arising from the same firearms possession, while petitioners in other cases have been able to obtain COIs without having to prove their innocence of all charged offenses. In *Warner*, for instance, Justice Martin agreed that the petitioner was required to prove his innocence of other charged offenses when the stipulated facts established that he committed the other offenses. 2022 IL App (1st) 210260, ¶ 52 (Martin, J., specially concurring). "The same operative facts proved other charged offenses." *Id.* I also agree with *Brown* that it is doubtful that the legislature "envisioned compensating people who could have been lawfully imprisoned for more serious offenses but who happened to plead guilty to a lesser offense that was later recognized to be void *ab initio*." *Brown*, 2022 IL App (4th) 220171, ¶ 25 (majority opinion).

¶ 164        However, requiring no nexus whatsoever between the offense for which the petitioner seeks a COI and other charges in the information would lead to the absurd results I described earlier. Requiring some reasonable nexus between the offense for which a petitioner seeks a COI and other offenses for which he must establish his innocence would not be improper. As the majority acknowledges, when a literal reading of the statute leads to absurd results that the legislature could not have intended, the court can reasonably read it to mean something else. *Supra* ¶ 99. Applying this principle, the majority has already limited the phrase "the offenses charged in the indictment or information" to offenses charged against the defendant seeking a COI and not a codefendant. *Supra* ¶ 99. And the majority also appears to hold that a petitioner would not have to prove his innocence of charges on which he or she was acquitted. See *supra* ¶ 109 (distinguishing *Palmer* on the basis that the defendant in *Palmer* was acquitted of the burglary charge). Both things are limitations that the majority is reading into the plain statutory language.

¶ 165        For purposes of this case, it is not necessary to define precisely what the required nexus should be. Here, where petitioner was charged with multiple Class 4 felony counts of AUUW arising out of the same firearm possession and only two of the four are constitutionally invalid, it makes sense that petitioner should not be able to obtain a certificate of innocence unless he can establish his innocence of the valid charges. Moreover, it would be preferable for the legislature, rather than this court, to clarify the precise reach of the phrase "the offenses charged in the

indictment or information." At the end of his special concurrence in *Brown*, Justice Doherty called on the legislature to clarify two things: (1) the intended charges, other than those on which the defendant seeks a certificate, of which the defendant must prove innocence, and (2) operation of these principles in the context of a plea agreement. See *Brown*, 2022 IL App (4th) 220171, ¶ 43 (Doherty, J., specially concurring). I agree with Justice Doherty that it would be immensely helpful for the legislature to clarify these two things, which would help ensure both that (1) COIs are limited to the truly deserving and (2) unjust and impossible obstacles are not placed in the path of the truly deserving.

¶ 166       For these reasons, I concur in the majority's judgment.

¶ 167       JUSTICES NEVILLE and O'BRIEN join in this special concurrence.